United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE CONTINENTAL INSURANCE
COMPANY, a corporation,

    Plaintiff,

  v.

KAWASAKI KISEN KASHA, LTD. d/b/a
"K" LINE, a foreign corporation, "K" LINE
AMERICA, INC., a foreign corporation,
and DOE ONE through DOE TEN,

    Defendants.

                                     /

No. C 07-06148 WHA

**ORDER DENYING
MOTION TO REMAND**

## INTRODUCTION

This order holds that all claims by a shipper for damage to cargo under a bill of lading for seaborne carriage between a United States port and a foreign port are exclusively governed by the Carriage of Goods by Sea Act and federal maritime law, thus preempting application of state-law claims. Removal to federal court of such a complaint is therefore authorized even though it may be pled solely in terms of state-law claims. As such, plaintiff's motion to remand is **DENIED**.

## STATEMENT

In September of 2006 a large shipment of plums traveled by vessel from Oakland, California to Hong Kong (Compl. ¶ 5; Opp. 2). The plums traveled under four separate bills of lading, all issued by or on behalf of defendants Kawasaki Kisen Kaisha, Ltd. and "K" Line

America, Inc. By the time of their delivery in Hong Kong, the plums were allegedly spoiled. (Compl. ¶ 6).

Plaintiff, a domestic insurance company, issued a cargo insurance policy to its insured, Kingsburg Orchards, to cover the shipment of plums. On October 26, 2007, plaintiff filed a complaint in state court against defendants, asserting four state-law claims: breach of contract, bailment, negligence, and breach of California Civil Code § 2194 (a statute that makes inland common carriers liable for damage to freight). The complaint asserted that defendants "agreed, under contracts of carriage" to carry the cargo of plums from Oakland to Hong Kong (Compl. ¶ 5). Defendants, according to the complaint, received the cargo of plums in Oakland "in good order and condition" but delivered the cargo in Hong Kong damaged due to exposure to "improper temperature" (Compl. ¶ 5, 6). No federal claim was expressly asserted.

In December of 2007, defendants removed under 28 U.S.C. 1441(b), asserting that the controversy was governed by the Carriage of Goods by Sea Act ("COGSA"). The immediate question is whether to remand for lack of subject-matter jurisdiction.

**ANALYSIS**

**1.    LEGAL STANDARD.**

Removal under 28 U.S.C. 1441(b) is permitted if the claim is one "arising under" federal law. The removing party bears the burden of establishing that removal is proper. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1990). The removal statutes are strictly construed such that any doubts are resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Under the well-pleaded complaint rule, "a cause of action arises under federal law only when the plaintiffs' well-pleaded complaint raises issues of federal law." *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987)). In order to remove an action to federal court, a federal question must appear on the face of the complaint. *Ibid.* The existence of a federal defense — even the defense of preemption — is normally not enough to justify removal to federal court. *Caterpillar Inc. v.*

2

*Williams,* 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption.").

The doctrine of complete preemption recognizes, however, that the "preemptive force" of a federal statute can be so strong as to completely preempt state law. "In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 862 (9th Cir. 2003). State claims deemed to have been completely preempted by federal claims are properly removed to federal court. *In re Miles,* 430 F.3d 1083, 1088 (9th Cir. 2005). To date, the Supreme Court has determined that three federal statutes completely preempt state law: Section 301 of the Labor and Management Relations Act (29 U.S.C. 185); Section 502 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1132); and Sections 85 and 86 of the National Bank Act (12 U.S.C. 85, 86). *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–11 (2003). In *Beneficial National Bank v. Anderson,* the Supreme Court explained that the "proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive." *Id.* at 9 n.5. The Ninth Circuit has explained that complete preemption only arises in "extraordinary" situations and that "[t]he test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." *Ansley,* 340 F.3d at 862 (quoting *Wayne v. DHL Worldwide Express,* 294 F.3d 1179, 1184 (9th Cir. 2002)).

### 2. THE CARRIAGE OF GOODS BY SEA ACT (COGSA).

By its own terms, COGSA applies to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade . . ." (46 U.S.C. 30701). COGSA imposes specific duties on the carrier between the "tackles" — *i.e.,* from the time "when the goods are loaded on to the time when they are discharged from the ship." It also carves out immunities for "uncontrollable losses" (*e.g.,* acts of god, war, strikes, etc.) and provides a default liability limitation of $500 per package. Parties are allowed to negotiate higher liability limitations but an agreement setting a liability limitation below $500 per package is void. Under COGSA, a shipper can establish a prima facie case by producing a valid bill of lading and showing that the cargo was damaged.

3

1  The burden then shifts to the carrier to prove that the damage resulted from a cause for which it
2  is not liable (*i.e.,* a cause for which an immunity applies). Claims for damages must be brought
3  within one year of delivery of the cargo. *Ibid.*; *see also Admiralty and Maritime Law,* Federal
4  Judicial Center, at 58–80 (2004); Michael E. Crowley, *The Limited Scope of the Cargo Liability
5  Regime Covering Carriage of Goods by Sea: The Multimodal Problem,* 79 Tul. L. Rev. 1461
6  (2005).

7  Neither the Supreme Court nor the Ninth Circuit has spoken directly to the question of
8  whether COGSA completely preempts state law. *See* Wright, Miller and Cooper, *Federal
9  Practice & Procedure: Jurisdiction* § 3722.1 (3d ed. 2007). The courts that have reached the
10 question have come to differing conclusions. *See Hemphill v. Transfresh Corporation, et al.,*
11 No. C 98-0899 VRW, 1998 WL 320840 (N.D. Cal. 1998) (concluding that COGSA did not
12 completely preempt state law); *Greenidge v. Mundo Shipping Corporation,* 41 F. Supp. 2d
13 354, 358 (E.D.N.Y. 1999) (holding that COGSA did not completely preempt state law because
14 it did not regulate all onboard activities). *Compare Joe Boxer Corp. v. Fritz Transp. Intern.*
15 33 F. Supp. 2d 851, 855 (C.D. Cal. 1998) (finding COGSA to be completely preemptive but
16 holding that the law did not govern the facts of the case); *Polo Ralph Lauren, L.P., v. Tropical
17 Shipping & Constr. Co.,* 215 F.3d 1217, 1220 (11th Cir. 2000) (noting that COGSA is "silent
18 on its preemptive scope" but holding that COGSA provides an exclusive remedy).

19 This order will follow the Eleventh Circuit's decision in *Polo Ralph Lauren, L.P.* and
20 hold that COGSA provides an exclusive remedy and therefore completely preempts state law.
21 *First,* the text of COGSA implies that Congress intended to supersede other laws, thereby
22 providing an exclusive remedy. *Second,* COGSA sets forth the kind of comprehensive
23 regulatory scheme that the Supreme Court found to provide an exclusive remedy in *Beneficial
24 National Bank v. Anderson*. 539 U.S. at 10. *Third,* the Supreme Court's recent opinion in
25 *Norfolk Southern Railway Co. v. Kirby* makes clear that state law must yield to COGSA where it
26 applies. 543 U.S. 14, 28–29 (2004). In short, COGSA leaves no state remedy in its wake; it
27 provides an exclusive remedy and is therefore completely preemptive. Here are the details.
28

4

Although COGSA is "silent on its preemptive scope," the text of the statute implies that Congress intended for COGSA to supersede other laws and provide an exclusive remedy. *Polo Ralph Lauren, L.P.*, 215 F.3d at 1220. By its terms, COGSA applies between the "tackles" — in other words, while the cargo is physically on board the ship. The statute explicitly preserves laws that apply before or after this "tackle-to-tackle" period (46 U.S.C. 30701):

> Nothing in this chapter shall be construed as superseding any part of sections 190 to 196 of this title, or of any other law which would be applicable in the absence of this chapter, insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship.

By expressly stating that the law does *not* supersede laws outside the "tackle-to-tackle" period, Congress evidenced an assumption that COGSA *does* supersede laws during the "tackle-to-tackle" period. The Eleventh Circuit adopted this interpretation in *Polo Ralph Lauren, L.P.* where it held that COGSA provides the "exclusive remedy" for goods lost or damaged at sea. 215 F.3d at 1220. Pointing to the passage quoted above, the Eleventh Circuit concluded that COGSA preempted claims of negligence, breach of contract, and bailment. "Because COGSA governs during the time after cargo is loaded and before it is removed from the ship, the implication from this provision is that COGSA, when it applies, supersedes other laws." *Ibid*.

COGSA provides the kind of comprehensive regulatory scheme that the Supreme Court found to be completely preemptive in *Beneficial National Bank v. Anderson*. In that case, the Supreme Court concluded that the National Bank Act provided the exclusive cause of action for usury claims, noting that the provisions of the Act formed a "system of regulations . . . [all] the parts [of which] are in harmony with each other and cover the entire subject" such that "the state law would have no bearing." 539 U.S. at 10 (internal quotations omitted). Similarly, COGSA's provisions form a "system of regulations" under which state law has "no bearing." COGSA imposes affirmative duties on carriers and carves out immunities for "uncontrollable losses." It protects shippers by voiding agreements that limit liability below $500 a package and it lays out a burden-shifting procedural scheme wherein the carrier bears the burden of proving no fault.

5

1  Its statute of limitations bars suits filed after a year from delivery. In short, COGSA is a
2  comprehensive system of regulations that "cover[s] the entire subject" and leaves no room for
3  state law.

4  The Supreme Court's recent opinion in *Norfolk Southern Railway Co. v. Kirby* further
5  makes clear that state law must yield to federal maritime law in general and to COGSA where it
6  applies. 543 U.S. at 28–29. In *Kirby,* a shipper contracted with a freight forwarder to ship cargo
7  from Australia to Alabama. The cargo traveled safely through the ocean leg of its trip but
8  sustained damage from a train wreck in Alabama. The shipper sued the railroad, asserting tort
9  and contract claims. The Supreme Court reached two conclusions that have particular relevance
10 to the present case. *First,* the Supreme Court concluded that federal maritime law, not state law,
11 governed the case, despite the fact that the damage arose from a train wreck. *Id.* at 22–28
12 ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls
13 the contract interpretation"). The Court explained that federal law must govern in order to avoid
14 "confusion and inefficiency" and to protect the "uniformity of general maritime law." *Id.* at 28.
15 *Second,* the Court held that because one of the bills of lading at issue had expressly extended
16 COGSA's default liability rule to the inland portion of the journey, the railroad was entitled to
17 the limitation's protection. "In protecting the uniformity of federal maritime law, we also
18 reinforce the liability regime Congress established in COGSA." *Id.* at 29.

19 If federal maritime law governs a train wreck in Alabama then, *a fortiori*, federal
20 maritime law governs the ocean voyage of plums from Oakland to Hong Kong. More
21 specifically, because plaintiff's complaint alleges the prima facie elements of a COGSA claim,
22 federal maritime law and COGSA apply here. The complaint asserts that defendants "agreed,
23 under contracts of carriage" to carry the cargo of plums from Oakland to Hong Kong. (Compl.
24 ¶ 5). Defendants, according to the complaint, received the cargo of plums in Oakland under four
25 bills of lading and delivered the cargo damaged in Hong Kong. (Compl. ¶ 5, 6). Under these
26 facts, COGSA applies; state law has "no bearing." As in *Beneficial National Bank v. Anderson,*
27 "[e]ven though the complaint makes no mention of federal law," plaintiff's cause of action "only
28

6

1 arises under federal law and could, therefore, be removed under § 1441." *Beneficial Nat'l Bank*,
2 539 U.S. at 11.
3       As noted above, some courts have found that Congress did not intend for COGSA to
4 completely preempt state law. The court in *Hemphill v. Transfresh Corp.* came to that
5 conclusion. 1998 WL 320840 at 3. This decision came down, however, before the Supreme
6 Court decided *Kirby,* before the Eleventh Circuit decided *Polo Ralph Lauren*, and before the
7 Supreme Court offered its recent clarification of the complete preemption doctrine in *Beneficial*
8 *National Bank v. Anderson*. *See* Gil Seinfeld, *The Puzzle of Complete Preemption*, 155 U. Pa. L.
9 Rev. 537, 552 (2007) ("In the wake of the decision in *Beneficial National Bank*, the confusion
10 that previously accompanied application of the complete preemption rule has subsided
11 considerably"). Moreover, in *Hemphill v. Transfresh Corp.*, as in other cases, the court pointed
12 to a lack of precedent to support the conclusion that COGSA was not completely preemptive; the
13 court did not engage in a full analysis under the complete preemption doctrine. *Hemphill,* 1998
14 WL 320840 at 3; *see also JVC Americas Corp. v. CSX Intermodal Inc.,* 292 F. Supp. 2d 586, 594
15 (D.N.J. 2003) ("The courts that have addressed this issue have reached varying results, so there
16 is no "bright line" on this issue . . . there is no "bright line" or clear Congressional intent in this
17 area to justify preemption"). The absence of precedent, however, should not be equated with the
18 absence of congressional intent. The "proper inquiry focuses on whether Congress intended the
19 federal cause of action to be exclusive." *Beneficial Nat'l Bank*, 539 U.S. at 9 n.5.
20       In a 1999 decision, a district court in New York concluded that COGSA did not
21 completely preempt state law because "it does not regulate all onboard activities related to
22 cargo." *Greenidge,* 41 F. Supp. 2d at 354. The court did not specify which onboard activities,
23 in its determination, remained unregulated by COGSA. Although COGSA enumerates specific
24 affirmative duties (for example, COGSA requires carriers to "properly and carefully load,
25 handle, stow, carry, keep, care for, and discharge the goods carried"), certain of its provisions
26 would apply to activities not specifically enumerated (for example, the statute of limitations).
27 46 U.S.C. 30701. Moreover, assuming for the sake of argument that gaps do exist under
28

7

COGSA, the Supreme Court made clear in *Kirby* that federal maritime law, not state law, would fill those gaps.

In a 1995 decision, the Fifth Circuit held that "COGSA does not preclude claims for cargo damages that sound in tort." *Associated Metals & Minerals Corp. v. Alexander's Unity,* 41 F.3d 1007, 1017 (5th Cir. 1995). The present case can be distinguished, however, because plaintiff has brought *state* tort claims. At issue in *Associated Metals & Minerals Corp. v. Alexander's Unity* was the proper balance between COGSA and the rest of federal maritime law. At issue here is the proper balance between COGSA and *state* law.

## CONCLUSION

For the foregoing reasons, this order holds that, as to the specific disputes at hand, federal maritime law and COGSA completely preempt any state law remedy. This case was therefore properly removed to federal court. Plaintiff's motion to remand is **DENIED**. A separate case management order will issue.

**IT IS SO ORDERED.**

Dated: February 25, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE