1  Alan Nakazawa, State Bar No. 84670
   Dena S. Aghabeg, State Bar No. 185311
2  COGSWELL NAKAZAWA & CHANG, LLP
   444 West Ocean Boulevard, Suite 1250
3  Long Beach, California  90802-8131
   Telephone (562) 951-8668
4  Facsimile: (562) 951-3933

5  Attorneys for Defendants
   KAWASAKI KISEN KAISHA, LTD. and
6  "K" LINE AMERICA, INC.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 | THE CONTINENTAL INSURANCE          ) CASE NO.: 07-cv-06148 WHA
   | COMPANY, a corporation,            )
12 |                                    )
   |              Plaintiff,            ) MEMORANDUM OF POINTS AND
13 |                                    ) AUTHORITIES IN SUPPORT OF
   |     vs.                            ) DEFENDANTS KAWASAKI KISEN
14 |                                    ) KAISHA, LTD.'S AND "K" LINE
   | KAWASAKI  KISEN KAISHA, LTD.       ) AMERICA, INC.'S MOTION TO DISMISS
15 | D/B/A "K" LINE, a foreign corporation; "K" ) PURSUANT TO TOKYO DISTRICT
   | LINE AMERICA, INC., a foreign      ) COURT FORUM SELECTION CLAUSE IN
16 | corporation; and DOE ONE through DOE ) BILL OF LADING
   | TEN,                               )
17 |                                    )
   |              Defendants.           ) Date:      April 17, 2008
18 |                                    ) Time:      8:00 a.m.
                                          Location:  450 Golden Gate Ave.
19                                                   San Francisco, CA
                                                     Courtroom 9, 19th Floor
20                                                   Honorable William Alsup

21

22

23

24

25

26

27

28

                              1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................... 2

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................... 2

III. ARGUMENT
     THE COURT SHOULD DISMISS THIS ACTION PURSUANT
     TO THE TOKYO DISTRICT COURT FORUM SELECTION CLAUSE
     IN THE BILL OF LADING .............................................. 9

     A    The Carriage of Goods by Sea Act Governs This Action ................... 9

     B.   The Tokyo District Court Forum Selection Clause of the Bill of
          Lading is Prima Facie Valid and Enforceable ........................... 10

     C.   Plaintiff Cannot Satisfy its Heavy Burden of Establishing the
          Forum Clause Should Not be Enforced ................................ 14

     D.   The Forum Selection Clause Applies to Plaintiff's Claims ................ 15

     E.   Under the Himalaya Clause of the Bill of Lading, KAM Is Entitled to
          the Benefits of the Bill of Lading .................................... 15

IV.  CONCLUSION ...................................................... 17

1                          **TABLE OF AUTHORITIES**

2    **Case**                                                               **Page**

3    *All Pacific Trading Corp. v. M/V HANJIN YOSU,*
         7 F. 3d 1427 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
4
5    *American International Knitters Corp. v. Kawasaki Kisen Kasha, Ltd.,*
         1988 AMC 434 (D.N. Mariana Is. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6    *Am. Home Assur. Co. v. M/V JAAMI,*
         2007 U.S. Dist. LEXIS 25864 at *6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
7
8    *Argueta v. Banco Mexicano S.A.,*
         87 F.3d. 320, 324 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9    *Bison Pulp & Paper Ltd. v. M/V PERGAMOS,*
         1996 A.M.C. 2022 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
10
11   *Carnival Cruise Lines, Inc. v. Shute,*
         499 U.S. 585, 590 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12   *Chiyoda Fire & Marine Co. of Am. v. M/V HYUNDAI FREEDOM,*
         1999 AMC 1603, 1999 U.S. Dist. LEXIS 19993 at *3 . . . . . . . . . . . . . . . . . . . . 12, 13
13
14   *Fireman's Fund Ins. Co. v. DSR ATLANTIC,*
         131 F. 3d 1336 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12-13, 14

15   *Indemnity Ins. Co. of North America v. M/V EASLINE TIANJIN,*
         2008 U.S. Dist. LEXIS 10926 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
16
17   *Institute of London Underwriters v. Sea-Land Serv., Inc.,*
         881 F.2d 761, 766-67 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18   *Keslo Enters., Ltd. v. M/V WISIDA FROST,*
         8 F. Supp. 2d 1197 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
19
20   *Kukje Hwaje Ins. Co. v. M/V HYUNDAI LIBERTY,*
         408 F.3rd 1250 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21   *LPR, SRL v. Challenger Oversea, LLC,*
         2000 AMC, 2887 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
22
23   *Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
         858 F.2d. 509, 513 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

24   *Mitsui & Co. (USA), Inc. v. MIRA M/V,*
         111 F.3d 33 (5th Cor. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
25
26   *M/S BREMEN v. Zapata Off-Shore Co.,*
         407 U.S. 1, 92 S. Ct. 1907,
         32 L. Ed. 2d 513 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10-11, 12, 13, 14
27
28   *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.,*
         462 F.Supp.2d 1098 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

                                            ii

**Case**                                                                 **Page**

*TMC Co., Ltd. v. M/V MOSEL BRIDGE,*
    2002 AMC 2355, 2002 U.S. Dist. LEXIS 14451 (S.D.N.Y. 2002) . . . . . . . . . . . . . . 11, 13

*Tokio Marine and Fire Insurance Co., Ltd. v. COSCO,*
    2004 AMC 1048 (C.D. Cal. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tokio Marine & Fire Ins. Co. v. Kaisha,*
    25 F. Supp.2d 1071, 1078-79 (C.D.Cal. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER,*
    515 U.S. 528, 115 S. Ct. 2322, 132 L. Ed. 2d 462 (1995) . . . . . . . . . . . . . . 2, 12, 13, 14


**STATUTES**

46 U.S.C. App. § 1300. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Civil Procedure, Rule 12(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS ACTION                     Case No. 07-cv-06148 WHA

# I.

## **INTRODUCTION**

This action involves the shipment of four containers of plums by vessel from Oakland, California, to Hong Kong.  The four containers were carried pursuant to the terms of four separate bills of lading issued by the ocean carrier, Kawasaki Kisen Kaisha, Ltd. (hereinafter "K" Line).  After delivery of the shipment to Hong Kong, the plums were allegedly found damaged.

The bills of lading provided for the exclusive jurisdiction of all cargo disputes in the Tokyo District Court.  The Plaintiff, The Continental Insurance Company (hereinafter "Continental"), the insurer of the shipper of the cargo, Kingsburg Orchards, brought suit against "K" Line and its United States agent, "K" Line America, Inc. (hereinafter "KAM") alleging that "K" Line and KAM breached the bills of lading contracts of carriage.  (Complaint, ¶¶ 4-7). Neither this Court nor defendants "K "Line and KAM should be burdened further with Continental's lawsuit in this jurisdiction.

"K" Line and KAM now move the Court for an order dismissing the Complaint filed against them pursuant to the Tokyo District Court forum selection clause in the bills of lading.  Based on the Supreme Court decisions in M/V *BREMEN v. Zapata Off-Shore Co.* and *Vimar Seguros Y Reaseguros S.A. v. SKY REEFER*, Ninth Circuit case law, including the Ninth Circuit decision in *Fireman's Fund Ins. Co., v. Cho Yang Shipping Co.*, and numerous District Court decisions which have enforced such clauses, this Court should uphold the agreement of the parties to have this cargo dispute brought in the Tokyo District Court and should dismiss the within action in favor of the Japanese forum.

# II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

"K" Line is an ocean carrier, organized and existing under the laws of Japan with its principal place of business in Tokyo.  ( Decl. of Sherry Johnson, ¶ 4.)  KAM, is a Michigan corporation  with its principal place of business in Richmond, Virginia.  (Decl. of Sherry

2

1  Johnson, ¶ 5). KAM is the agent of "K" Line in the United States. (Decl. of Sherry Johnson, ¶

2  5).

3         Plaintiff Continental, issued a cargo insurance policy to its insured, Kingsburg

4  Orchards, to cover the shipment of the plums from Oakland to Hong Kong. (Plaintiff's

5  Memorandum of Points and Authorities in Support of Motion to Remand, p. 2). Kingsburg

6  Orchards was the shipper of the shipment of plums. (Plaintiff's Memorandum of Points and

7  Authorities in Support of Motion to Remand, p. 2).

8         On or about September 8, 2006, at Oakland, California, Kingsburg Orchards

9  delivered the shipment of plums in four containers to "K" Line for carriage to Hong Kong.

10  (Complaint, ¶ 5). "K" Line issued four bills of lading (Waybill nos. KKLUUS1542042,

11  KKLUUS1541953, KKLUUS1541951 and KKLUUS1652123) to cover the carriage of the

12  plums from Oakland to Hong Kong. (Complaint, ¶ 5; Decl. of Sharon Morris, ¶¶ 4-7). True and

13  correct copies of the four bills of lading are attached as Exhibits "A", "B", "C", and "D" to the

14  Decl. of Sharon Morris, ¶¶ 4-7).

15         Continental's insured, Kingsburg Orchards, was the designated "shipper" under

16  the bills of lading. Kingo Fruits (HKG) Co. Ltd. was the "consignee" specified on the bills of

17  lading. (*See* bills of lading attached to the Decl. of Sharon Morris).

18         The face of the bills of lading provided:

19         "In consideration of Carrier's acceptance of the Containers

20         or packages, the Shipper (on its own behalf and on behalf

21         of all persons included in the definition of "Merchant"

22         contained in the "K" Line Combined Transport Bill of Lading)

23         agrees that all terms on the face and back hereof apply.

24         MERCHANT SPECIFICALLY AGREES THAT ITS

25         ATTENTION HAS BEEN DRAWN TO AND THAT IT

26         HAS ACCEPTED THE "K" LINE COMBINED TRANSPORT

27         BILL OF LADING ("CARRIER'S B/L"), CARRIER'S

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS ACTION                                    Case No. 07-cv-06148 WHA

1   APPLICABLE TARIFF(S), AND THE CMI UNIFORM RULES

2   FOR SEA WAYBILLS INCORPORATED HEREIN BY

3   CLAUSE 1 ON THE REVERSE SIDE HEREOF"

4

5   Clause 7.2 on the reverse side of the bills of lading provides:

6   "The contract evidenced by this Waybill shall be governed by

7   Japanese law except as may be otherwise provided for herein,

8   and <u>any action brought hereunder and/or in respect of the Goods</u>

9   <u>shall be brought before the Tokyo District Court in Japan,</u> to

10  whose jurisdiction the Shipper hereby irrevocably submits, on

11  its own behalf and on behalf of all persons included in the

12  definition of "Merchant" contained in Carrier's B/L."

13  [Emphasis added].

14

15  The reverse side of the bills of lading had the following additional clauses:

16

17  "2.2  IT IS EXPRESSLY AGREED THAT NO SUB-

18  CONTRACTOR (as defined in Carrier's B/L) SHALL HAVE

19  ANY LIABILITY OR RESPONSIBILITY WHATSOEVER IN

20  RESPECT OF OR IN CONNECTION WITH GOODS, AND

21  THAT THE TERMS OF CLAUSE 5 OF CARRIER'S B/L (AS

22  INCORPORATED HEREIN) APPLY TO ANY SUCH SUB-

23  CONTRACTOR."

24

25  "3.1  Incorporation by reference.  Save to the extent they are

26  inconsistent with the terms expressly set out herein, the provisions

27  of the following documents are hereby incorporated into and form

28

4

part of the contract of carriage evidenced by this Waybill:(1) All of the terms, conditions, exceptions and stipulations on the back of the K line standard form bill of lading ("Carrier's B/L"). Every reference therein to the words "Bill(s) of Lading" shall be read and construed to mean the words "Non Negotiable Waybill(s)", and the terms and conditions thereof shall be read and construed in the context of this Waybill accordingly. (2) All the terms of Carrier's applicable Tariff(s) in effect the date the contract evidenced by this Waybill is entered into, and published in accordance with all applicable national laws (3) The CMI Uniform Rules for Sea Waybills, excluding rule 4(iii) In the event of inconsistency between the documents themselves, they shall have priority in the order in which they appear."

"3.3.1  Carrier's B/L may be inspected at or a copy obtained from Carrier's offices or those of its authorized agents.  The text may also be found at Carrier's websites: www.kline.com or www.kline.co.uk."

"6.2.1  The Shipper accepts the terms and conditions hereof on its own behalf and on behalf of the Consignee, the owner of the Goods, any person defined as Merchant in Carrier's B/L and any other person claiming by or through it or them.  The Shipper warrants that it has the authority of all such persons so to accept the terms and conditions hereof, or will procure the acceptance/ratification of the terms and conditions by all such persons."

5

1    "6.3  The Shipper further undertakes that no claim or allegation in

2    respect of the Goods shall be made against Carrier by any person

3    other than in accordance with the terms and conditions of this

4    Waybill."

5

6    The terms of "K" Line's Combined Transport bill of lading is incorporated by

7  reference in the bills of lading.  (See face of the bills of lading quoted above and Clause 3.1 on

8  the reverse side of the bills).  "K" Line's Combined Transport bill of lading has the following

9  additional relevant clauses:

10

11    **"Clause 1 (Definitions and Tariff)**

12    (1)  In this Bill of Lading the words and expressions specified

13    below shall have the meanings attributed to them below:

14    ...1. 'Carrier' means KAWASAKI KISEN KAISHA, LTD., Vessel,

15    her owners, operators and charterers whether acting as carrier or

16    bailee...

17    ... 8. 'Merchant' includes the shipper, consignor, consignee, owner

18    and receiver of Goods,  and Holder, and anyone acting on behalf of

19    any such person, including but not limited to agents, servants,

20    independent contractors and freight forwarders...

21    ... 9. 'Sub-Contractor' includes stevedores, longshoremen, terminal

22    operators, warehousemen, watchmen, any Connecting Carrier, and

23    any person, firm, corporation, or other legal entity who or which

24    performs services incidental to carriage of Goods under this Bill of

25    Lading, and their servants, agents and independent contractors."

26  //

27  //

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS ACTION                              Case No. 07-cv-06148 WHA

1    **"Clause 2 (Governing Law and Jurisdiction)**

2    The contract evidenced by or contained in this Bill of Lading shall

3    be governed by Japanese law except as may be otherwise provided

4    for herein, and **any action thereunder or in connection with**

5    **Carriage of Goods shall be brought before the Tokyo District**

6    **Court** in Japan, to whose jurisdiction Merchant irrevocably

7    consents."

8    [Emphasis added.]

9

10    **"Clause 4 (Responsibility for Shipments To, From or Through US**

11    **Territories)**

12    (1) With respect to Goods shipped to, from or through US

13    Territories, Carrier's responsibilities during the entire period (and

14    not just during Water Carriage) from the time of receipt of Goods

15    to the time of delivery of Goods shall be governed by the United

16    States Carriage of Goods by Sea Act (US COGSA) and US

17    COGSA shall be deemed incorporated herein during the entire

18    aforesaid period, provided however that if loss or damage to Goods

19    is proven to have occurred during other than Water Carriage and

20    outside US Territories, Carrier's responsibilities shall be

21    determined in accordance with Clause 3(B) instead of US

22    COGSA."

23

24    **"Clause 5 (Sub-Contracting: Exemptions, Immunities, Limitations,**

25    **etc. of Participants)**

26    (1) Carrier shall be entitled to sub-contract on any terms

27    whatsoever Carriage, including without limitation, the loading,

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS ACTION                          Case No. 07-cv-06148 WHA

1         unloading, storing, warehousing, handling and any and all duties

2         whatsoever undertaken by Carrier in relation to Goods by any of

3         the following: (I) any Connecting Carrier, (II) masters, officers,

4         crew, employees or any other servants, of Carrier and Connecting

5         Carrier, (III) sub-contractors, stevedores, longshoremen, terminal

6         operators, warehousemen, watchmen, **agents** and independent

7         contractors whatsoever used or employed by Carrier from time to

8         time in connection with the performance of any of Carrier's

9         obligations under this Bill of Lading (all of the foregoing are

10        hereafter referred to as "Participant(s)"). ...(2) ...**Without**

11        **prejudice to the foregoing, every such vessel and Such**

12        **Participant(s) shall have the benefit of all provisions herein**

13        **benefiting Carrier as if such provisions were expressly for their**

14        **benefit; and, in entering into this contract, Carrier, to the**

15        **extent of those provisions, does so not only on its own behalf,**

16        **but also as agent and trustee for such vessel and**

17        **Participant(s)....**"

18 [Emphasis added.]

19

20        The four containers of plums were carried by "K" Line from Oakland to

21 Hong Kong. (Complaint, ¶¶ 5,6). After delivery of the plums, the consignee, Kingo Fruits,

22 complained the plums were damaged.

23        Plaintiff Continental, as the subrogated insurer of the shipper, Kingsburg

24 Orchards, brought suit against "K" Line and KAM for the alleged cargo damage in the Superior

25 Court of California County of Alameda. (Complaint). The Complaint specifically alleges that

26 the cargo was carried under the "K" Line bills of lading and that "K" Line and KAM breached

27 the contracts of carriage. (Complaint, ¶¶ 5,6).

28

8

1          "K" Line and KAM removed the action to this Court. Continental moved to

2  remand the action to state court and on February 25, 2008, the Court issued its Order Denying

3  Motion to Remand.

4          "K" Line and KAM answered the Complaints and raised the affirmative defense

5  that the claims against them should be dismissed pursuant to the Tokyo District Court forum

6  selection clause in the bills of lading. (See Answer, Sixteenth Affirmative Defense, p. 12).

7          Pursuant to the Case Management Order filed February 25, 2008, the Court

8  ordered that any motion based on the forum selection clause be filed by March 13, 2008.

### III.

### ARGUMENT

**THE COURT SHOULD DISMISS THIS ACTION PURSUANT**

**TO THE TOKYO DISTRICT COURT FORUM SELECTION**

**CLAUSE IN THE BILL OF LADING**

A.    **The Carriage of Goods By Sea Act Governs This Action**

15          The Carriage of Goods by Sea Act (hereinafter "COGSA"), 46 U.S.C. App. §

16  1300, et seq., was enacted by Congress in 1936 as the United States' version of the "Hague

17  Rules", an international maritime convention signed in Brussels on August 25, 1924. The Hague

18  Rules have been adopted by most of the major maritime nations of the world. COGSA, like the

19  Hague Rules, establishes a comprehensive framework of the rights and liabilities by which

20  shippers and ocean carriers are governed.

21          COGSA applies ex proprio vigore to every bill of lading that evidences a contract

22  for the carriage of goods by sea either to or from the United States in foreign trade. See 46

23  U.S.C. App. § 1300. In the instant case, the "K" Line bills of lading evidence a contract for the

24  carriage of goods by sea from a United States port (i.e. Oakland) to a foreign port (i.e. Hong

25  Kong). Accordingly, COGSA applies to and governs Plaintiffs' claims against "K" Line and

26  KAM under the bills of lading.

27

28

1 **B.     The Tokyo District Court Forum Selection Clause of the Bill of Lading is Prima**

2 **Facie Valid and Enforceable.**

3          A motion to dismiss pursuant to a forum selection clause is treated as a motion to

4 dismiss for improper venue under Federal Rules of Civil Procedure, Rule 12(b)(3).  See *Argueta*

5 *v. Banco Mexicano S.A.*, 87 F.3d. 320, 324 (9th Cir. 1996).  In evaluating the motion, the Court

6 may consider facts outside of the pleadings. *Argueta*, 87 F.3d. 324.

7          The enforceability of a forum selection clause is governed by federal law.

8 *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991); *Manetti-Farrow, Inc. v. Gucci*

9 *Am., Inc.*, 858 F.2d. 509, 513 (9th Cir. 1988).

10          Decisional law of the United States Supreme Court, which has been widely

11 followed, has uniformly held that a forum selection clause in a bill of lading is '*prima facie*'

12 valid and enforceable and should be only set aside by a clear showing that enforcement would be

13 unreasonable and unjust.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 12, 25, 92 S. Ct.

14 1907, 32 L. Ed. 2d 513 (1972); *Fireman's Fund Ins. Co. v. M.V. DSR*, 131 F.3d. 1336, 1338 (9th

15 Cir. 1998).

16          In *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed.

17 2d 513 (1972), the Supreme Court recognized the validity of forum selection clauses.  In that

18 case, a German corporation, Unterweser, agreed to tow an offshore drilling rig of an American

19 corporation, Zapata, from Louisiana to Italy under a contract providing that "[a]ny dispute arising

20 must be treated before the London Court of Justice." *Id*, at 2, 32 L. Ed. 2d at 516.  The rig was

21 damaged in a severe storm and was towed Tampa, Florida, where Zapata commenced suit and

22 arrested the Vessel.  In its complaint, Zapata alleged negligent towage and breach of contract.

23 *Id.*, at 3-4, 32 L. Ed. 2d at 517.  Unterweser invoked the English forum selection clause in

24 moving for dismissal.  The District Court  held that the forum selection clause was unenforceable

25 and the Court of Appeals affirmed.

26          The United States Supreme Court, vacating the judgment of the Court of Appeals,

27 held that the forum selection clause should be specifically enforced unless Zapata "could clearly

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS ACTION                                Case No. 07-cv-06148 WHA

1  show that enforcement would be unreasonable and unjust, or that the clause was invalid for such

2  reasons as fraud or overreaching. " *Id.* at 15, 32 L. Ed. 2d at 523.  The Court, in recognizing the

3  utility of, and the necessity for, forum selection clauses in international transactions, observed:

4

5          Manifestly much uncertainty and possibly great inconvenience to both parties

6          could arise if a suit could be maintained in any jurisdiction in which an accident

7          might occur or if jurisdiction were left to any place where the Bremen or

8          Unterweser might happen to be found . . . ..  The elimination of all such

9          uncertainties by agreeing in advance on a forum acceptable to both parties is an

10         indispensable element in international trade, commence, and contracting.

11  *Id.* at 13-14, 32 L. Ed. 2d at 522-23 (footnote omitted).

12

13         The *BREMEN* Court recognized that a forum selection clause may be

14  "unreasonable" and therefore unenforceable "if the chosen forum is *seriously* inconvenient for

15  the trial of the action." *Id.* at 16, 32 L. Ed. 2d at 524 (emphasis by Court).  However, the party

16  claiming the serious inconvenience bears a heavy burden of proof.  *Id.* at 17, 32 L. Ed. 2d at 524.

17  In such circumstances it should be incumbent on the party seeking to escape his contract to show

18  that trial in the contractual forum will be gravely difficult and inconvenient that he will for all

19  practical purposes be deprived of his day in Court.  *Id.* at 18, 32 L. Ed. 2d at 525.

20         In response to Zapata's argument that the forum clause should not be construed to

21  provide for an exclusive forum or to include Zapata's *in rem* claim, the Supreme Court rejected

22  those arguments because "the language of the clause is clearly mandatory and all-encompassing."

23  *Id* . at 20, 32 L. Ed. 2d at 526.[1]

24

25         [1]   Similarly, the forum selection clause in the "K" Line Bill of Lading is mandatory
26  because it provides plaintiffs must ("shall") bring "any action" under the bill of lading or that relates
    to the carriage of cargo before the Tokyo District Court. In *Bison Pulp & Paper Ltd. v. M/V*
27  *PERGAMOS*, 1996 A.M.C. 2022 (S.D.N.Y. 1995), the Court concluded that language in a forum
    selection clause to the effect that any disputes arising under the bill of lading "shall" be brought in
28  a particular forum is mandatory. *Id.* at 2033-36. *Also see TMC Co., Ltd. v. M/V MOSEL BRIDGE,*

11

1        In *Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 115 S.

2   Ct. 2322, 132 L. Ed. 2d 462 (1995), the Supreme Court reiterated the primacy of a foreign forum

3   selection clause in a bill of lading governed by COGSA. *SKY REEFER* involved the shipment of

4   Moroccan oranges and lemons aboard a refrigerated cargo ship from Morocco to Massachusetts.

5   The carriage of the fruit was governed by a bill of lading, which included an arbitration provision

6   whereby "[a]ny dispute arising from this Bill of Lading shall be referred to arbitration in

7   Tokyo."[2] *See SKY REEFER*, 132 L. Ed. 2d at 469-70.  The fruit was found to be damaged upon

8   discharge in the United States and suit was brought in the United States District Court against the

9   SKY REEFER *in rem* and the shipowner *in personam*.  The defendants moved to stay the action

10   and compel arbitration in Tokyo under the applicable provision of the bill of lading.  Both the

11   District Court and the Ninth Circuit granted defendants' motion and ordered the case to Tokyo

12   arbitration.  *Id.*  The *SKY REEFER* Court upheld the Tokyo arbitration clause and affirmed.  In so

13   doing, the Court held that the increased cost and inconvenience of arbitrating in Tokyo were not

14   sufficient reasons to not enforce the forum selection clause.  *Sky Reefer*, 515 U.S. 528, at 535,

15   536.

16        The Ninth Circuit Court of Appeals has followed *BREMEN* and *SKY REEFER*.  In

17   *Fireman's Fund Ins. Co. v. DSR ATLANTIC*, 131 F. 3d 1336 (9th Cir. 1997), the Ninth Circuit

18   considered the enforceability of a Korean forum selection clause in a bill of lading covering a

19   shipment of wine that suffered freeze damage while being transported from France to California.

20   The forum selection clause in *Fireman's Fund* provided: "The contract evidenced by or

21   contained in this Bill of Lading is governed by the law of Korea and any claim or dispute arising

22

23   _____

24   2002 AMC 2355, 2002 U.S. Dist. LEXIS 14451 (S.D.N.Y. 2002) (forum clause in "K" Line bill of
     lading providing that any action under the bill of lading shall be brought before the Tokyo District
25   Court held mandatory); *Am. Home Assur. Co. v. M/V JAAMI*, 2007 U.S. Dist. LEXIS 25864 at *6
     (enforcing similar Tokyo District Court forum clause as mandatory); *Chiyoda Fire & Marine Co.*
26   *of Am. v. M/V HYUNDAI FREEDOM*, 1999 AMC 1603, 1999 U.S. Dist. LEXIS 19993, *3
     (S.D.N.Y. 1999).

27

28   [2]  A foreign arbitration clause is a subset of a foreign forum selection clause and the same
     principles apply.  *SKY REEFER*, supra, at 534; *Fireman's Fund*, supra, at 1336.

12

1  hereunder or in connection herewith shall be determined by the Courts in Seoul and no other

2  Courts. *Id.* at 1337. The cargo insurer brought an *in personam* action against the carrier and an

3  *in rem* action against the vessel. All parties agreed that *in rem* actions are not available in Korea.

4  Defendants brought a motion to dismiss in favor of the Korean forum. The District Court

5  refused to enforce the forum selection clause and denied defendants' motion to dismiss. *Id.* at

6  1337-38.

7         The Ninth Circuit reversed the decision of the District Court. *Id.* at 1338.

8  Following the reasoning of *BREMEN* and *SKY REEFER*, the Ninth Circuit rejected the cargo

9  insurer's arguments that the inability to proceed *in rem* in Korea was a sufficient reason to set

10  aside the forum selection clause on public policy grounds, that the clause was invalid because the

11  bill of lading was a contract of adhesion, or that the clause violated the policies behind COGSA.

12  *Id.* at 1338-39.

13         Rather, the Court held the Korean forum selection clause was enforceable and

14  dismissed the action for want of jurisdiction. *Id.* at 1340. See also *Kukje Hwaje Ins. Co. v. M/V*

15  *HYUNDAI LIBERTY*, 408 F.3rd 1250 (9th Cir. 2005) (Korean forum selection clause in ocean bill

16  of lading enforced).

17         Following *BREMEN* and *SKY REEFER*, Courts have consistently enforced forum

18  selection clauses in ocean bills of lading. See *Kelso Enters., Ltd. v. M/V WISIDA FROST*, 8 F.

19  Supp. 2d 1197 (C.D. Cal. 1998) (Court enforced English forum selection clause in bill of lading

20  and dismissed the action). *Tokio Marine v. COSCO*, 2004 AMC 1048 (C.D. Cal. 2004) (China

21  forum selection clause in bill of lading enforced). More importantly, District Courts have

22  consistently enforced the Tokyo District Court forum clause in "K" Line's bill of lading. See

23  *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F.Supp.2d 1098 (C.D. Cal. 2006); *TMC*

24  *Co., Ltd. v. M/V MOSEL BRIDGE*, 2002 AMC 2355, 2002 U.S. Dist. LEXIS 14451 (S.D.N.Y.

25  2002); *Chiyoda Fire & Marine Ins. Co. of America v. M/V HYUNDAI FREEDOM*, 1999 AMC

26  1603, 1999 U.S. Dist. LEXIS 19993 (S.D.N.Y.); *American International Knitters Corp. v.*

27  *Kawasaki Kisen Kasha, Ltd.*, 1988 AMC 434 (D.N. Mariana Is. 1987); *Indemnity Ins. Co. of*

28

1   *North America v. M/V EASLINE TIANJIN*, 2008 U.S. Dist. LEXIS 10926 (S.D.N.Y. 2008).

2   **C.**    **Plaintiff Cannot Satisfy its Heavy Burden of Establishing the Forum Clause Should**

3         **Not be Enforced**

4            *Bremen, SKY REEFER* and *Fireman's Fund* are on all fours with this case.

5   Plaintiffs have brought suit under the bills of lading contracts of carriage, the very contracts that

6   contains the forum selection clause.  Under the foregoing authority, the Tokyo District Court

7   forum selection clause in the "K" Line bills of lading is "prima facie" valid and should be

8   enforced unless Continental can satisfy the heavy burden of proving that enforcement is

9   "unreasonable" and "unjust" under the circumstances. *Bremen*, supra at 10.  In order to satisfy

10  this heavy burden, Continental must clearly show (1) fraud or overreaching in the inducement of

11  the forum selection clause of the bill of lading; (2) the contractual forum is so seriously

12  inconvenient that it will be for all practical purposes deprived of its day in court; or (3)

13  enforcement of the forum clause would contravene a strong public policy of the forum in which

14  suit is brought. *Bremen*, supra at 12, 15, 18; *Fireman's Fund*, supra, at 1338; *Kelso Enterprises,*

15  *Ltd. v. M/V WISIDA FROST,* 8 F. Supp. 2d 1197, 1202 (C.D.Cal.1998).  In the case at hand, there

16  is no evidence of fraud or overreaching in the inducement of the forum clause, Plaintiff

17  Continental would not experience undue inconvenience in litigating in Tokyo if the forum clause

18  is enforced and there is no public policy which requires litigation in this forum. Like in *Bremen,*

19  *SKY REEFER* and *Fireman's Fund*, Continental cannot carry its heavy burden of proving that the

20  Tokyo District Court forum selection clause in the "K" Line Bill of Lading should not be

21  enforced.  See *Bremen*, supra, 407 U.S. at 17, 32 L.Ed. 2d at 524; *Fireman's Fund*, supra at

22  1338.

23           Continental chose to ignore the forum selection clause.  The Court should prevent

24  such forum shopping on the part of Plaintiff. As the *Bremen* Court stated, "[m]anifesly much

25  uncertainty and possibly great inconvenience to both parties could arise. . . if jurisdiction were

26  left to any place where the Bremen or Unterweser might happen to be found." *Bremen*, supra, at

27  522. Continental's insured agreed in the bills of lading to resolve this cargo dispute in the Tokyo

28

14

1  District Court and it should be ordered to abide by that agreement.

2  **D.      The Forum Selection Clause Applies to Plaintiffs' Claims**

3          Plaintiff Continental brings this action as the subrogated insurer of the shipper of

4  the plums, Kingsburg Orchards. (Complaint, ¶ 7).  Kingsburg Orchards was the designated

5  "shipper" under the bills of lading and therefore was a party to the contracts of carriage.[3]  *See*

6  bills of lading attached to the Decl. of Sharon Morris.

7          Further, Plaintiff (and its insured Kingsburg Orchards)  accepted the terms of the

8  bills of lading by filing suit to recover on these bills of lading.  Continental alleges that the cargo

9  was carried under the "K" Line bills of lading and that the "K" Line defendants breached the bills

10 of lading.  See Complaint, ¶¶ 5,6.  When a party brings suit against a carrier under the carrier's

11 bill of lading, it accepts the terms of the bills and is bound by it.  *All Pacific Trading Corp. v.*

12 *M/V HANJIN YOSU*, 7 F. 3d 1427, 1442 (9th Cir. 1993); *Mitsui & Co. (USA), Inc. v. MIRA M/V*

13 111 F. 3d 33, 36 (5th Cir. 1997).

14 **E.      Under the Himalaya Clause of the Bill of Lading, KAM Is Entitled to the Benefits of**

15 **the Bill of Lading**

16         KAM is merely the United States agent of the ocean carrier, "K" Line.  See Decl.

17 of Johnson, ¶ 5.    As agent, KAM was an expressed beneficiary of the Himalaya Clause of the

18 Bill of Lading.[4]

19         Clause 2.2 of the bills of lading provides:

20

21          [3] Clause 1 of "K" Line's Combined Transport Bill of Lading form, which is incorporated by
22 reference in the Waybill form (see Clause 3.1 on the reverse side of the Waybill) defines "Merchant"
    to include the "shipper, consignor, consignee, owner and receiver of the goods, and Holder, and
23 anyone acting on behalf of any such person, including but not limited to agents, servants,
    independent contractors and freight forwarders."  See Combined Transport Bill of Lading attached
24 as Exhibit "E" to the Decl. of Sharon Morris.  Thus, it is clear that Plaintiff is covered by the bill of
    lading definition of "Merchant" and is bound by the bill of lading terms, including the forum
25 selection clause.

26

27          [4]The so-called "Himalaya Clause" is a clause in the ocean bill of lading which gives the
    benefit of the bill of lading defenses and limitations to the downstream parties who perform the
28 services contemplated by the bill of lading.

15

1    "IT IS EXPRESSLY AGREED THAT NO SUB-CONTRACTOR

2    (as defined in Carrier's B/L) SHALL HAVE ANY LIABILITY OR

3    RESPONSIBILITY WHATSOEVER IN RESPECT OF OR IN

4    CONNECTION WITH GOODS, AND THAT THE TERMS OF

5    CLAUSE 5 OF CARRIER'S B/L (AS INCORPORATED

6    HEREIN) APPLY TO ANY SUCH SUB-CONTRACTOR."

7

8    Further, Clause 5 of the Combined Transport bill of lading form provides:

9

10   **"Clause 5 (Sub-Contracting: Exemptions, Immunities,**

11   **Limitations, etc. of Participant(s)**

12   (1) Carrier shall be entitled to sub-contract on any terms

13   whatsoever Carriage, including without limitation, the

14   loading, unloading, storing, warehousing, handling and

15   any duties whatsoever undertaken by Carrier in relation to

16   Goods by any of the following: (I) any Connecting Carrier,

17   (II) masters, officers, crew, employees or any other servants,

18   of Carrier and Connecting Carrier, (III) sub-contractors,

19   stevedores, longshoremen, terminal operators, warehousemen,

20   watchmen, **agents** and independent contractors whatsoever

21   used or employed by Carrier from time to time in connection

22   with the performance of any of Carrier's obligations under

23   this Bill of Lading (all of the foregoing are hereinafter referred

24   to as "Participant(s)"). ...

25   (2) ... **Without prejudice to the foregoing, every such vessel**

26   **and Such Participant(s) shall have the benefit of all provisions**

27   **herein benefitting Carrier as if such provisions were expressly**

28

16

1    **for their benefit; and, in entering into this contract, Carrier**

2    **to the extent of those provisions, does so not only on its own**

3    **behalf, but also as agent and trustee of such vessel and**

4    **Participant(s). ..."** [Emphasis added].

5

6    The so-called Himalaya Clause, has been uniformly held by the Courts to extend

7    the benefits of the terms and conditions of bills of lading to agents and contractors of the carrier.

8    *Institute of London Underwriters v. Sea-Land Serv., Inc.*, 881 F.2d 761, 766-67 (9th Cir.

9    1989)(package limitation clause of bill of lading extended by Himalaya Clause to cover the

10   stevedore); *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 42 F.Supp.2d. 1098, 1103 (C.D.

11   Cal. 2006)("K" Line America, Inc., as agent, entitled to the benefit of Tokyo District Court

12   forum clause under Himalaya Clause of K-Line's bill of lading); *Tokio Marine & Fire Ins. Co. v.*

13   *Kaisha*, 25 F. Supp.2d 1071, 1078-79 (C.D.Cal. 1997)(one year statute of limitations clause of

14   bill of lading extended by Himalaya Clause to cover rail carrier); *LPR, SRL v. Challenger*

15   *Overseas, LLC*, 2000 AMC 2887, 2892 (S.D.N.Y. 2000) (agent of ocean carrier entitled to

16   benefit of forum selection clause).

17   KAM, as the agent of "K" Line and third party beneficiary under the Himalaya

18   Clause of the bills of lading, is entitled to the benefit of all provisions of the bills of lading,

19   including the Tokyo District Court forum selection clause.[5]

20   ## IV.

21   ## CONCLUSION

22   Pursuant to the Tokyo District Court forum selection clause of the "K" Line bills

23   of lading, and in accordance with the Supreme Court and Ninth Circuit authority mandating

24   enforcement of foreign forum selection clauses in ocean bills of lading, Defendants "K" Line and

25   KAM request that this Court enter an order dismissing the action against them in favor of the

26

27   [5] KAM is also entitled to be dismissed because it is the agent of a disclosed principal. <u>See</u>

28   bottom corner of face of bills of lading. KAM reserves the right to assert this and any additional
     defenses if the Court does not grant its motion to dismiss as a beneficiary of the forum clause.

                                          17

1    Tokyo District Court.

2

3    Dated: March 13, 2008          COGSWELL NAKAZAWA & CHANG, LLP

4
                                    By      /s/ Alan Nakazawa
5                                           Alan Nakazawa
                                            Dena S. Aghabeg
6                                           Attorneys for Defendants KAWASAKI KISEN
                                            KAISHA, LTD. and "K" LINE AMERICA, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on March 13, 2008, a copy of the foregoing MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KAWASAKI KISEN
3 KAISHA, LTD.'S AND "K" LINE AMERICA, INC.'S MOTION TO DISMISS PURSUANT
TO TOKYO DISTRICT COURT FORUM SELECTION CLAUSE IN BILL OF LADING was
4 filed electronically.  Notice of this filing will be sent to the following parties by operation of the
Court's electronic filing system.  Parties may access this filing through the Court's system:

5

6 Jonathan Will Thames
ARCHER NORRIS
jthames@archernorris.com
7 kloyd@archernorris.com

8 James Jin-Woo Jirn
ARCHER NORRIS
9 jjirn@archernorris.com

10

11      I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

12

13 Dated: March 13, 2008                          /s/ Alan Nakazawa
                                                 Alan Nakazawa

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19