**EXHIBIT A** (2 pages)

**WAYBILL NON-NEGOTIABLE**

| SHIPPER | Waybill Number: KKLUUS1542042 (COPY) |
|---|---|
| KINGSBURG ORCHARDS<br>P.O. BOX 38<br>KINGSBURG, CALIFORNIA<br><br>93631 | EXPORT REFERENCES    BKG#=RFR305927<br>SHIPS.REF : 607211 |

| CONSIGNEE | FORWARDING AGENT - REFERENCES |
|---|---|
| KINGO FRUITS (HKG) CO. LTD.<br>RM 2222, BLK 7, 22/F ON PAK HSE<br>CHEUNG ON EST TSING YI AREA 8<br>NEW TERRITORIES HONG KONG<br>PEOPLE'S REPUBLIC OF CHINA | L.E. COPPERSMITH, INC. FMC# 234<br>525 S. DOUGLAS ST., CHB#3349<br>EL SEGUNDO, CA 90245 REF# EL.49352<br><br>POINT AND COUNTRY OF ORIGIN |

| NOTIFY PARTY | |
|---|---|
| KINGO FRUITS (HKG) CO. LTD.<br>RM 2222, BLK 7, 22/F ON PAK HSE<br>CHEUNG ON EST TSING YI AREA 8<br>NEW TERRITORIES HONG KONG<br>PEOPLE'S REPUBLIC OF CHINA | In consideration of Carrier's acceptance of the Containers or packages, the Shipper (on its own behalf and on behalf of all persons included in the definition of "Merchant" contained in the "K" Line Combined Transport Bill of Lading") agrees that all terms on the face and back hereof apply. MERCHANT SPECIFICALLY AGREES THAT ITS ATTENTION HAS BEEN DRAWN TO AND THAT IT HAS ACCEPTED THE "K" LINE COMBINED TRANSPORT BILL OF LADING ("CARRIER'S B/L"), CARRIER'S APPLICABLE TARIFF(S), AND THE CMI UNIFORM RULES FOR SEA WAYBILLS INCORPORATED HEREIN BY CLAUSE 1 ON THE REVERSE HEREOF. |

| PRE-CARRIAGE | PLACE OF RECEIPT<br>OAKLAND, CA | |
|---|---|---|
| VESSEL/VOYAGE    23W<br>YM SUCCESS | PORT OF LOADING<br>OAKLAND, CA | |
| PORT OF DISCHARGE<br>HONG KONG | PLACE OF DELIVERY<br>HONG KONG | FINAL DESTINATION (FOR MERCHANT'S REFERENCE ONLY) |

**PARTICULARS FURNISHED BY SHIPPER**

| CONTAINER & SEAL NO | NO OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | 1 | X40'HR CNTR SLAC:<br>1360 CTNS FRESH PLUMS<br>SET TEMPERATURE 34F<br>AES# X20060908062192 | 40798LB | 18506KG |

KLFU5607909  0000118

LADEN ON BOARD YM SUCCESS 23W AT OAKLAND, CA ON 9-8-06

\*\*\* WAYBILL \*\*\* FREIGHT PREPAID.  SHIPPER'S LOAD AND COUNT.  CY/CY.

These Commodities, Technologies or Software were Exported from the United States in Accordance with Export Administration Regulations. Diversion Contrary to U.S. Law Prohibited. RECEIVED by Carrier from the Shipper on the terms hereof the total number of Containers or packages said to contain Goods enumerated below in the box marked "Total No. of Containers or Packages (in words)" in apparent good order and condition (unless otherwise indicated herein) for Carriage from the Place of Receipt or the Port of Loading to the Port of Discharge or the Place of Delivery. This Waybill supersedes any prior arrangements, agreements or representations by Carrier, its agent or any other person, save for service contracts between the parties, and where applicable valid under the United States Shipping Act.

Total No. of Containers or Packages (in words):  One Container

| DECLARED VALUE $ | | IF SHIPPER ENTERS A VALUE THE AD VALOREM RATE WILL BE CHARGED (SEE CLAUSE 24) | | | |
|---|---|---|---|---|---|
| FREIGHT AND CHARGES. | | RATE/PER | | PREPAID | COLLECT |
| O.FRT(60514) | 1.000 | USD 2,400.00 P40 | | 2,400.00 | |
| DEST DLVY CHG | 1.000 | HKD 3,238.00 P40 | | | 3,238.00 |
| FAF | 1.000 | USD   635.00 P40 | | 635.00 | |
| CARRIER ISPS SECURITY C | 1.000 | USD     6.00 P40 | | 6.00 | |
| DOC FEE | 1.000 | USD    25.00 LMP | | 25.00 | |

PREPAID AT: RICHMOND    PAYABLE AT: HONG KONG    TOTAL:    USD 3,066.00    HKD 3,238.00

| PLACE & DATE OF ISSUE | KAWASAKI KISEN KAISHA, LTD. ON ITS OWN BEHALF AND ON BEHALF OF THE VESSEL,HER OWNERS, OPERATORS AND CHARTERERS. |
|---|---|
| RICHMOND, VA<br>SEPTEMBER 08, 2006<br>FORM KL062 (6/3) | By    **NON-NEGOTIABLE (COPY)**<br>"K" Line America, Inc., as Agents for Carrier Kawasaki Kisen Kaisha, Ltd. |

1     All words or terms contained in this Waybill that begin with an upper case (capital) letter are terms defined in Carrier's B/L and/or Tariff(s), and have the same meaning herein (as applicable or with logical amendments) - see clause 3.1 below.

2.1    Unless otherwise set out on the face or back hereof, Containers or packages said to contain Goods and/or Goods are accepted by Carrier for Carriage on the terms hereof (whether expressly set out or incorporated by reference). These terms shall determine all rights, obligations and defenses applicable or available to Carrier, the master and Vessel (including her owners) in connection with or arising out of Carriage, including without limitation the acceptance, possession, handling, transportation and delivery of Containers and/or packages and/or Goods in every contingency, wheresoever and whensoever occurring, including (without limitation) in the event of deviation or of unseaworthiness of Vessel.

2.2    IT IS EXPRESSLY AGREED THAT NO SUB-CONTRACTOR (as defined in Carrier's B/L) SHALL HAVE ANY LIABILITY OR RESPONSIBILITY WHATSOEVER IN RESPECT OF OR IN CONNECTION WITH GOODS, AND THAT THE TERMS OF CLAUSE 5 OF CARRIER'S B/L (AS INCORPORATED HEREIN) APPLY TO ANY SUCH SUB-CONTRACTOR.

2.3    None of the terms of this Waybill may be, or may be deemed to have been waived or amended, otherwise than expressly in writing signed by Carrier.

3.1    Incorporation by reference. Save to the extent they are inconsistent with the terms expressly set out herein, the provisions of the following documents are hereby incorporated into and form part of the contract of carriage evidenced by this Waybill:(1) All of the terms, conditions, exceptions and stipulations on the back of the K line standard form bill of lading ("Carrier's B/L"). Every reference therein to the words "Bill(s) of Lading" shall be read and construed to mean the words "Non Negotiable Waybill(s)", and the terms and conditions thereof shall be read and construed in the context of this Waybill accordingly.(2) All the terms of Carrier's applicable Tariff(s) in effect the date the contract evidenced by this Waybill is entered into, and published in accordance with all applicable national laws(3) The CMI Uniform Rules for Sea Waybills, excluding rule 4(iii)In the event of inconsistency between the documents themselves, they shall have priority in the order in which they appear.

3.2    The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in article 1(b) of the Hague Rules, the Hague Visby Rules and the United States Carriage of Goods by Sea Act. HOWEVER, THIS WAYBILL IS NOT A DOCUMENT OF TITLE TO GOODS.

3.3.1    Carrier's B/L may be inspected at or a copy obtained from Carrier's offices or those of its authorized agents. The text may also be found at Carrier's websites: www.kline.com or www.kline.co.uk.

3.3.2    The text of the CMI Uniform Rules for Sea Waybills may be found at www.comitemaritime.org/rules/rulessaway.html.

4.1    Unless otherwise specified in this Waybill (in particular, but without limitation, in clause 4.2 below in respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Delivery or other ports or places in the United States of America), delivery of Goods will be made only to the Consignee named on the face hereof, or its authorized agents, on production of proof of identity.

4.2    In respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Delivery or other ports or places in the United States of America, clause 4.1 shall not apply. The procedure relating to the release of Goods applicable to any particular port or place in the United States of America is set out in Carrier's published tariff. Provided the said procedure(s) is/are followed, Carrier shall be deemed to have exercised reasonable care in relation to the release and delivery of Goods, and shall not be liable to Merchant in respect of any claim for misdelivery or wrongful release and/or delivery of the Goods. MERCHANT EXPRESSLY ACKNOWLEDGES AND AGREES THAT SUCH PROCEDURES WILL OR MAY PROVIDE FOR THE DELIVERY OF GOODS TO ANY PERSON WHO PRESENTS SHIPMENT PARTICULARS TO THE TERMINAL. If this sub-clause 4.2 is held invalid or inapplicable in any court of competent jurisdiction, the terms of clause 4.1 shall apply, read with the deletion of the words in parentheses.

5.1    Should the Shipper require delivery at a place elsewhere than at the Place of Delivery or the Port of Discharge as shown on the face hereof and should written instruction accordingly be given by the Shipper to Carrier or its agents, Carrier may, at its discretion, deliver Goods at such other place.

5.2    Should the Consignee require delivery elsewhere than at the Place of Delivery or the Port of Discharge shown on the face hereof and should written instruction be given reasonably in advance by the Consignee to Carrier or its agent, Carrier may, at its discretion, without any notice to the Shipper deliver Goods at such other place, PROVIDED ALWAYS that the right of control has been transferred to the Consignee in accordance with CMI Uniform Rule 6(ii).

5.3    Should the Shipper retain the right of control and should delivery be required to be made to a party other than the named Consignee, written authorization must be given by the Shipper to Carrier or its agents reasonably in advance of delivery, in accordance with CMI Uniform Rule 6(i).

6.1    Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, Carrier will, subject to the terms and conditions hereof, process cargo claims with the Consignee. Claims settlement with the Consignee (if any) shall be a complete discharge of Carrier's liability to the Shipper.

6.2.1    The Shipper accepts the terms and conditions hereof on its own behalf and on behalf of the Consignee, the owner of Goods, any person defined as Merchant in Carrier's B/L and any other person claiming by or through it or them. The Shipper warrants that it has the authority of all such persons so to accept the terms and conditions hereof, or will procure the acceptance/ratification of the terms and conditions by all such persons.

6.2.2    With respect to Carriage to, from or through US Territories, and without prejudice to the preceding sub-clause, all persons included in the definition of "Merchant" contained in Carrier's B/L are on notice through tariff publication of this Waybill form that they are bound to and by all the terms and conditions of this Waybill form and Carrier's B/L.

6.3    The Shipper further undertakes that no claim or allegation in respect of Goods shall be made against Carrier by any person other than in accordance with the terms and conditions of this Waybill.

7.1    The terms of this Waybill are severable, and if any term, exception, condition or stipulation is or is held to be invalid, null, void or unenforceable, such holding shall not affect in any way the validity or enforceability or any other term etc hereof.

7.2    The contract evidenced by this Waybill shall be governed by Japanese law except as may be otherwise provided for herein, and any action brought hereunder and/or in respect of the Goods shall be brought before the Tokyo District Court in Japan, to whose jurisdiction the Shipper hereby irrevocably submits, on its own behalf and on behalf of all persons included in the definition of "Merchant" contained in Carrier's B/L.

**EXHIBIT B** (2 pages)

## WAYBILL NON-NEGOTIABLE

| SHIPPER | Waybill Number: KKLUUS1541951 (COPY) |
|---|---|
| KINGSBURG ORCHARDS<br>P.O. BOX 38<br>KINGSBURG, CALIFORNIA<br><br>93631 | EXPORT REFERENCES   BKG#RFR305924<br><br>SHIPS.REF : 607208 |

| CONSIGNEE | FORWARDING AGENT - REFERENCES |
|---|---|
| KINGO FRUITS (HKG) CO. LTD.<br>RM 2222, BLK 7, 22/F ON PAK HSE<br>CHEUNG ON EST TSING YI AREA 8<br>NEW TERRITORIES HONG KONG<br>PEOPLE'S REPUBLIC OF CHINA | L.E. COPPERSMITH, INC. FMC# 234<br>525 S. DOUGLAS ST., CHB#3349<br>EL SEGUNDO, CA 90245 REF# EL.49349<br><br>POINT AND COUNTRY OF ORIGIN |

| NOTIFY PARTY | |
|---|---|
| KINGO FRUITS (HKG) CO. LTD.<br>RM 2222, BLK 7, 22/F ON PAK HSE<br>CHEUNG ON EST TSING YI AREA 8<br>NEW TERRITORIES HONG KONG<br>PEOPLE'S REPUBLIC OF CHINA | In consideration of Carrier's acceptance of the Containers or packages, the Shipper (on its own behalf and on behalf of all persons included in the definition of 'Merchant' contained in the "K" Line Combined Transport Bill of Lading") agrees that all terms on the face and back hereof apply. MERCHANT SPECIFICALLY AGREES THAT ITS ATTENTION HAS BEEN DRAWN TO AND THAT IT HAS ACCEPTED THE "K" LINE COMBINED TRANSPORT BILL OF LADING (CARRIER'S B/L), CARRIER'S APPLICABLE TARIFF(S), AND THE CMI UNIFORM RULES FOR SEA WAYBILLS INCORPORATED HEREIN BY CLAUSE 1 ON THE REVERSE HEREOF. |

| PRE-CARRIAGE | PLACE OF RECEIPT<br>OAKLAND, CA | |
|---|---|---|
| VESSEL/VOYAGE         23W<br>YM SUCCESS | PORT OF LOADING<br>OAKLAND, CA | |
| PORT OF DISCHARGE<br>HONG KONG, HK | PLACE OF DELIVERY<br>HONG KONG, HK | FINAL DESTINATION (FOR MERCHANT'S REFERENCE ONLY) |

### PARTICULARS FURNISHED BY SHIPPER

| CONTAINER & SEAL NO. | NO OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASURMENT |
|---|---|---|---|---|
| | 1 | X40'HR CNTR SLAC:<br>1360 CARTONS FRESH PLUMS<br>SET TEMPERATURE 34F<br>AES# X20060908062193 | 40798LB<br>18506KG | |

KLFU5601048   0000105

LADEN ON BOARD YM SUCCESS 23W AT OAKLAND, CA ON 9-8-06

\*\*\* WAYBILL \*\*\* FREIGHT PREPAID.   SHIPPER'S LOAD AND COUNT.   CY/CY.

These Commodities, Technologies or Software were Exported from the United States in Accordance with Export Administration Regulations. Diversion Contrary to U.S. Law Prohibited. RECEIVED by Carrier from the Shipper on the terms hereof the total number of Containers or packages said to contain Goods enumerated below in the box marked "Total No. of Containers or Packages (in words)" in apparent good order and condition (unless otherwise indicated herein) for Carriage from the Place of Receipt or the Port of Loading to the Port of Discharge or the Place of Delivery. This Waybill supersedes any prior arrangements, agreements or representations by Carrier, its agent or any other person, save for service contracts between the parties, and where applicable valid under the United States Shipping Act.

Total No. of Containers or Packages (in words): One Container

| DECLARED VALUE $ | IF SHIPPER ENTERS A VALUE AD VALOREM RATE WILL BE CHARGED (SEE CLAUSE 24) | | | |
|---|---|---|---|---|
| **FREIGHT AND CHARGES** | **RATE/PER** | | **PREPAID** | **COLLECT** |
| O. FRT (60514) | 1.000 | USD 2,400.00 P40 | 2,400.00 | |
| DEST DLVY CHG | 1.000 | HKD 3,238.00 P40 | | 3,238.00 |
| FAF | 1.000 | USD  635.00 P40 | 635.00 | |
| CARRIER ISPS SECURITY C | 1.000 | USD    6.00 P40 | 6.00 | |
| DOC FEE | 1.000 | USD   25.00 IMP | 25.00 | |

PREPAID AT: RICHMOND   PAYABLE AT: HONG KONG   TOTAL:   USD 3,066.00   HKD 3,238.00

| PLACE & DATE OF ISSUE | KAWASAKI KISEN KAISHA, LTD. ON ITS OWN BEHALF AND ON BEHALF OF THE VESSEL, HER OWNERS, OPERATORS AND CHARTERERS. |
|---|---|
| RICHMOND, VA<br>SEPTEMBER 08, 2006<br>FORM KL062 (6/3) | By   **NON-NEGOTIABLE (COPY)**<br>"K" Line America, Inc., as Agents for Carrier Kawasaki Kisen Kaisha, Ltd. |

| | |
|---|---|
| 1 | All words or terms contained in this Waybill that begin with an upper case (capital) letter are terms defined in Carrier's B/L and/or Tariff(s), and have the same meaning herein (as applicable or with logical amendments) - see clause 3.1 below. |
| 2.1 | Unless otherwise set out on the face or back hereof, Containers or packages said to contain Goods and/or Goods are accepted by Carrier for Carriage on the terms hereof (whether expressly set out or incorporated by reference). These terms shall determine all rights, obligations and defenses applicable or available to Carrier, the master and Vessel (including her owners) in connection with or arising out of Carriage, including without limitation the acceptance, possession, handling, transportation and delivery of Containers and/or packages and/or Goods in every contingency, wheresoever and whensoever occurring, including (without limitation) in the event of deviation or of unseaworthiness of Vessel. |
| 2.2 | IT IS EXPRESSLY AGREED THAT NO SUB-CONTRACTOR (as defined in Carrier's B/L) SHALL HAVE ANY LIABILITY OR RESPONSIBILITY WHATSOEVER IN RESPECT OF OR IN CONNECTION WITH GOODS, AND THAT THE TERMS OF CLAUSE 5 OF CARRIER'S B/L (AS INCORPORATED HEREIN) APPLY TO ANY SUCH SUB-CONTRACTOR. |
| 2.3 | None of the terms of this Waybill may be, or may be deemed to have been waived or amended, otherwise than expressly in writing signed by Carrier. |
| 3.1 | Incorporation by reference. Save to the extent they are inconsistent with the terms expressly set out herein, the provisions of the following documents are hereby incorporated into and form part of the contract of carriage evidenced by this Waybill:(1) All of the terms, conditions, exceptions and stipulations on the back of the K line standard form bill of lading ("Carrier's B/L"). Every reference therein to the words "Bill(s) of Lading" shall be read and construed to mean the words "Non Negotiable Waybill(s)", and the terms and conditions thereof shall be read and construed in the context of this Waybill accordingly.(2) All the terms of Carrier's applicable Tariff(s) in effect the date the contract evidenced by this Waybill is entered into, and published in accordance with all applicable national laws(3) The CMI Uniform Rules for Sea Waybills, excluding rule 4(iii)In the event of inconsistency between the documents themselves, they shall have priority in the order in which they appear. |
| 3.2 | The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in article 1(b) of the Hague Rules, the Hague Visby Rules and the United States Carriage of Goods by Sea Act. HOWEVER, THIS WAYBILL IS NOT A DOCUMENT OF TITLE TO GOODS. |
| 3.3.1 | Carrier's B/L may be inspected at or a copy obtained from Carrier's offices or those of its authorized agents. The text may also be found at Carrier's websites: www.kline.com or www.kline.co.uk. |
| 3.3.2 | The text of the CMI Uniform Rules for Sea Waybills may be found at www.comitemaritime.org/rules/rulessaway.html. |
| 4.1 | Unless otherwise specified in this Waybill (in particular, but without limitation, in clause 4.2 below in respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Delivery or other ports or places in the United States of America), delivery of Goods will be made only to the Consignee named on the face hereof, or its authorized agents, on production of proof of identity. |
| 4.2 | In respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Delivery or other ports or places in the United States of America, clause 4.1 shall not apply. The procedure relating to the release of Goods applicable to any particular port or place in the United States of America is set out in Carrier's published tariff. Provided the said procedure(s) is/are followed, Carrier shall be deemed to have exercised reasonable care in relation to the release and delivery of Goods, and shall not be liable to Merchant in respect of any claim for misdelivery or wrongful release and/or delivery of the Goods. MERCHANT EXPRESSLY ACKNOWLEDGES AND AGREES THAT SUCH PROCEDURES WILL OR MAY PROVIDE FOR THE DELIVERY OF GOODS TO ANY PERSON WHO PRESENTS SHIPMENT PARTICULARS TO THE TERMINAL. If this sub-clause 4.2 is held invalid or inapplicable in any court of competent jurisdiction, the terms of clause 4.1 shall apply, read with the deletion of the words in parentheses. |
| 5.1 | Should the Shipper require delivery at a place elsewhere than at the Place of Delivery or the Port of Discharge as shown on the face hereof and should written instruction accordingly be given by the Shipper to Carrier or its agents, Carrier may, at its discretion, deliver Goods at such other place. |
| 5.2 | Should the Consignee require delivery elsewhere than at the Place of Delivery or the Port of Discharge shown on the face hereof and should written instruction be given reasonably in advance by the Consignee to Carrier or its agent, Carrier may, at its discretion, without any notice to the Shipper deliver Goods at such other place, PROVIDED ALWAYS that the right of control has been transferred to the Consignee in accordance with CMI Uniform Rule 6(ii). |
| 5.3 | Should the Shipper retain the right of control and should delivery be required to be made to a party other than the named Consignee, written authorization must be given by the Shipper to Carrier or its agents reasonably in advance of delivery, in accordance with CMI Uniform Rule 6(i). |
| 6.1 | Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, Carrier will, subject to the terms and conditions hereof, process cargo claims with the Consignee. Claims settlement with the Consignee (if any) shall be a complete discharge of Carrier's liability to the Shipper. |
| 6.2.1 | The Shipper accepts the terms and conditions hereof on its own behalf and on behalf of the Consignee, the owner of Goods, any person defined as Merchant in Carrier's B/L and any other person claiming by or through it or them. The Shipper warrants that it has the authority of all such persons so to accept the terms and conditions hereof, or will procure the acceptance/ratification of the terms and conditions by all such persons. |
| 6.2.2 | With respect to Carriage to, from or through US Territories, and without prejudice to the preceding sub-clause, all persons included in the definition of "Merchant" contained in Carrier's B/L are on notice through tariff publication of this Waybill form that they are bound to and by all the terms and conditions of this Waybill form and Carrier's B/L. |
| 6.3 | The Shipper further undertakes that no claim or allegation in respect of Goods shall be made against Carrier by any person other than in accordance with the terms and conditions of this Waybill. |
| 7.1 | The terms of this Waybill are severable, and if any term, exception, condition or stipulation is or is held to be invalid, null, void or unenforceable, such holding shall not affect in any way the validity or enforceability or any other term etc hereof. |
| 7.2 | The contract evidenced by this Waybill shall be governed by Japanese law except as may be otherwise provided for herein, and any action brought hereunder and/or in respect of the Goods shall be brought before the Tokyo District Court in Japan, to whose jurisdiction the Shipper hereby irrevocably submits, on its own behalf and on behalf of all persons included in the definition of "Merchant" contained in Carrier's B/L. |

**EXHIBIT C** (2 pages)

Page 1

KAWASAKI KISEN KAISHA, LTD.    ...03-LINE...-WHA   Document 29-2   Filed 03/13/2008   Page 8 of 22   Page 1 of 1   v1
WAYBILL NON-NEGOTIABLE

| SHIPPER | Waybill Number: KKLUUS1542123 (COPY) |
|---|---|
| KINGSBURG ORCHARDS<br>P.O. BOX 38<br>KINGSBURG, CALIFORNIA<br><br>93631 | EXPORT REFERENCES   BKG#=RFR801584<br><br>SHIPS.REF : 607423 |

| CONSIGNEE | FORWARDING AGENT - REFERENCES |
|---|---|
| KINGO FRUITS (HKG) CO. LTD.<br>RM 2222, BLK 7, 22/F ON PAK HSE<br>CHEUNG ON EST TSING YI AREA 8<br>NEW TERRITORIES HONG KONG<br>PEOPLE'S REPUBLIC OF CHINA | L.E. COPPERSMITH, INC. FMC# 234<br>525 S. DOUGLAS ST., CHB#3349<br>EL SEGUNDO, CA 90245 REF# EL.49353<br><br>POINT AND COUNTRY OF ORIGIN |

| NOTIFY PARTY | |
|---|---|
| KINGO FRUITS (HKG) CO. LTD.<br>RM 2222, BLK 7, 22/F ON PAK HSE<br>CHEUNG ON EST TSING YI AREA 8<br>NEW TERRITORIES HONG KONG<br>PEOPLE'S REPUBLIC OF CHINA | In consideration of Carrier's acceptance of the Containers or packages, the Shipper (on its own behalf and on behalf of all persons included in the definition of 'Merchant' contained in the 'K' Line Combined Transport Bill of Lading") agrees that all terms on the face and back hereof apply. MERCHANT SPECIFICALLY AGREES THAT ITS ATTENTION HAS BEEN DRAWN TO AND THAT IT HAS ACCEPTED THE "K" LINE COMBINED TRANSPORT BILL OF LADING ("CARRIER'S BILL"), CARRIER'S APPLICABLE TARIFF(S), AND THE CMI UNIFORM RULES FOR SEA WAYBILLS INCORPORATED HEREIN BY CLAUSE 1 ON THE REVERSE HEREOF. |

| PRE-CARRIAGE | PLACE OF RECEIPT<br>OAKLAND, CA | |
|---|---|---|
| VESSEL/VOYAGE   23W<br>YM SUCCESS | PORT OF LOADING<br>OAKLAND, CA | |
| PORT OF DISCHARGE<br>HONG KONG | PLACE OF DELIVERY<br>HONG KONG | FINAL DESTINATION (FOR MERCHANT'S REFERENCE ONLY) |

**PARTICULARS FURNISHED BY SHIPPER**

| CONTAINER & SEAL NO | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASURMENT |
|---|---|---|---|---|
| | 1 | X40'HR CNTR SLAC:<br>1360 CTN FRESH INTERSPECIFIC PLUMS<br>SET TEMPERATURE 34F<br>AES# X20060908062191 | 40798LB | 18506KG |

KKFU6942533   0000156

LADEN ON BOARD YM SUCCESS 23W AT OAKLAND, CA ON 9-8-06

*** WAYBILL *** FREIGHT PREPAID.  SHIPPER'S LOAD AND COUNT.  CY/CY.

These Commodities, Technologies or Software were Exported from the United States in Accordance with Export Administration Regulations. Diversion Contrary to U.S. Law Prohibited. RECEIVED by Carrier from the Shipper on the terms hereof the total number of Containers or packages said to contain Goods enumerated below in the box marked "Total No. of Containers or Packages (in words)" in apparent good order and condition (unless otherwise indicated herein) for Carriage from the Place of Receipt or the Port of Loading to the Port of Discharge or the Place of Delivery. This Waybill supersedes any prior arrangements, agreements or representations by Carrier, its agent or any other person, save for service contracts between the parties, and where applicable valid under the United States Shipping Act.

Total No. of Containers or Packages (in words): One Container

| DECLARED VALUE $ | IF SHIPPER ENTERS A VALUE THE AD VALOREM RATE WILL BE CHARGED (SEE CLAUSE 24) | | | |
|---|---|---|---|---|
| FREIGHT AND CHARGES | | RATE/PER | PREPAID | COLLECT |
| O. FRT (60514) | 1.000 | USD 2,400.00 P40 | 2,400.00 | |
| DEST DLVY CHG | 1.000 | HKD 3,238.00 P40 | | 3,238.00 |
| FAF | 1.000 | USD 635.00 P40 | 635.00 | |
| CARRIER ISPS SECURITY C | 1.000 | USD 6.00 P40 | 6.00 | |
| DOC FEE | 1.000 | USD 25.00 IMP | 25.00 | |

PREPAID AT: RICHMOND   PAYABLE AT: HONG KONG   TOTAL:   USD 3,066.00   HKD 3,238.00

| PLACE & DATE OF ISSUE | KAWASAKI KISEN KAISHA, LTD. ON ITS OWN BEHALF AND ON BEHALF OF THE VESSEL, HER OWNERS, OPERATORS AND CHARTERERS. |
|---|---|
| RICHMOND, VA<br>SEPTEMBER 08, 2006<br>FORM KL062 (6/3) | By   NON-NEGOTIABLE (COPY)<br>"K" Line America, Inc., as Agents for Carrier Kawasaki Kisen Kaisha, Ltd. |

1     All words or terms contained in this Waybill that begin with an upper case (capital) letter are terms defined in Carrier's B/L and/or Tariff(s), and have the same meaning herein (as applicable or with logical amendments) - see clause 3.1 below.

2.1     Unless otherwise set out on the face or back hereof, Containers or packages said to contain Goods and/or Goods are accepted by Carrier for Carriage on the terms hereof (whether expressly set out or incorporated by reference). These terms shall determine all rights, obligations and defenses applicable or available to Carrier, the master and Vessel (including her owners) in connection with or arising out of Carriage, including without limitation the acceptance, possession, handling, transportation and delivery of Containers and/or packages and/or Goods in every contingency, wheresoever and whensoever occurring, including (without limitation) in the event of deviation or of unseaworthiness of Vessel.

2.2     IT IS EXPRESSLY AGREED THAT NO SUB-CONTRACTOR (as defined in Carrier's B/L) SHALL HAVE ANY LIABILITY OR RESPONSIBILITY WHATSOEVER IN RESPECT OF OR IN CONNECTION WITH GOODS, AND THAT THE TERMS OF CLAUSE 5 OF CARRIER'S B/L (AS INCORPORATED HEREIN) APPLY TO ANY SUCH SUB-CONTRACTOR.

2.3     None of the terms of this Waybill may be, or may be deemed to have been waived or amended, otherwise than expressly in writing signed by Carrier.

3.1     Incorporation by reference. Save to the extent they are inconsistent with the terms expressly set out herein, the provisions of the following documents are hereby incorporated into and form part of the contract of carriage evidenced by this Waybill:(1) All of the terms, conditions, exceptions and stipulations on the back of the K line standard form bill of lading ("Carrier's B/L"). Every reference therein to the words "Bill(s) of Lading" shall be read and construed to mean the words "Non Negotiable Waybill(s)", and the terms and conditions thereof shall be read and construed in the context of this Waybill accordingly.(2) All the terms of Carrier's applicable Tariff(s) in effect the date the contract evidenced by this Waybill is entered into, and published in accordance with all applicable national laws(3) The CMI Uniform Rules for Sea Waybills, excluding rule 4(iii)In the event of inconsistency between the documents themselves, they shall have priority in the order in which they appear.

3.2     The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in article 1(b) of the Hague Rules, the Hague Visby Rules and the United States Carriage of Goods by Sea Act. HOWEVER, THIS WAYBILL IS NOT A DOCUMENT OF TITLE TO GOODS.

3.3.1    Carrier's B/L may be inspected at or a copy obtained from Carrier's offices or those of its authorized agents. The text may also be found at Carrier's websites: www.kline.com or www.kline.co.uk.

3.3.2    The text of the CMI Uniform Rules for Sea Waybills may be found at www.comitemaritime.org/rules/rulessaway.html.

4.1     Unless otherwise specified in this Waybill (in particular, but without limitation, in clause 4.2 below in respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Delivery or other ports or places in the United States of America), delivery of Goods will be made only to the Consignee named on the face hereof, or its authorized agents, on production of proof of identity.

4.2     In respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Delivery or other ports or places in the United States of America, clause 4.1 shall not apply. The procedure relating to the release of Goods applicable to any particular port or place in the United States of America is set out in Carrier's published tariff. Provided the said procedure(s) is/are followed, Carrier shall be deemed to have exercised reasonable care in relation to the release and delivery of Goods, and shall not be liable to Merchant in respect of any claim for misdelivery or wrongful release and/or delivery of the Goods. MERCHANT EXPRESSLY ACKNOWLEDGES AND AGREES THAT SUCH PROCEDURES WILL OR MAY PROVIDE FOR THE DELIVERY OF GOODS TO ANY PERSON WHO PRESENTS SHIPMENT PARTICULARS TO THE TERMINAL. If this sub-clause 4.2 is held invalid or inapplicable in any court of competent jurisdiction, the terms of clause 4.1 shall apply, read with the deletion of the words in parentheses.

5.1     Should the Shipper require delivery at a place elsewhere than the Place of Delivery or the Port of Discharge as shown on the face hereof and should written instruction accordingly be given by the Shipper to Carrier or its agents, Carrier may, at its discretion, deliver Goods at such other place.

5.2     Should the Consignee require delivery elsewhere than at the Place of Delivery or the Port of Discharge shown on the face hereof and should written instruction be given reasonably in advance by the Consignee to Carrier or its agent, Carrier may, at its discretion, without any notice to the Shipper deliver Goods at such other place, PROVIDED ALWAYS that the right of control has been transferred to the Consignee in accordance with CMI Uniform Rule 6(ii).

5.3     Should the Shipper retain the right of control and should delivery be required to be made to a party other than the named Consignee, written authorization must be given by the Shipper to Carrier or its agents reasonably in advance of delivery, in accordance with CMI Uniform Rule 6(i).

6.1     Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, Carrier will, subject to the terms and conditions hereof, process cargo claims with the Consignee. Claims settlement with the Consignee (if any) shall be a complete discharge of Carrier's liability to the Shipper.

6.2.1    The Shipper accepts the terms and conditions hereof on its own behalf and on behalf of the Consignee, the owner of Goods, any person defined as Merchant in Carrier's B/L and any other person claiming by or through it or them. The Shipper warrants that it has the authority of all such persons so to accept the terms and conditions hereof, or will procure the acceptance/ratification of the terms and conditions by all such persons.

6.2.2    With respect to Carriage to, from or through US Territories, and without prejudice to the preceding sub-clause, all persons included in the definition of "Merchant" contained in Carrier's B/L are on notice through tariff publication of this Waybill form that they are bound to and by all the terms and conditions of this Waybill form and Carrier's B/L.

6.3     The Shipper further undertakes that no claim or allegation in respect of Goods shall be made against Carrier by any person other than in accordance with the terms and conditions of this Waybill.

7.1     The terms of this Waybill are severable, and if any term, exception, condition or stipulation is or is held to be invalid, null, void or unenforceable, such holding shall not affect in any way the validity or enforceability or any other term etc hereof.

7.2     The contract evidenced by this Waybill shall be governed by Japanese law except as may be otherwise provided for herein, and any action brought hereunder and/or in respect of the Goods shall be brought before the Tokyo District Court in Japan, to whose jurisdiction the Shipper hereby irrevocably submits, on its own behalf and on behalf of all persons included in the definition of "Merchant" contained in Carrier's B/L.

**EXHIBIT D** (2 pages)

K LINE
KAWASAKI KISEN KAISHA, LTD.

**WAYBILL NON-NEGOTIABLE**

| SHIPPER | Waybill Number: KKLUUS1541953 (COPY) |

SHIPPER
KINGSBURG ORCHARDS
P.O. BOX 38
KINGSBURG, CALIFORNIA

93631

EXPORT REFERENCES   BKG#RFR305926
SHIPS.REF : 607210

CONSIGNEE
KINGO FRUITS (HKG) CO. LTD.
RM 2222, BLK 7, 22/F ON PAK HSE
CHEUNG ON EST TSING YI AREA 8
NEW TERRITORIES HONG KONG
PEOPLE'S REPUBLIC OF CHINA

FORWARDING AGENT - REFERENCES
L.E. COPPERSMITH, INC. FMC# 234
525 S. DOUGLAS ST., CHB#3349
EL SEGUNDO, CA 90245 REF# EL.49351

POINT AND COUNTRY OF ORIGIN

NOTIFY PARTY
KINGO FRUITS (HKG) CO. LTD.
RM 2222, BLK 7, 22/F ON PAK HSE
CHEUNG ON EST TSING YI AREA 8
NEW TERRITORIES HONG KONG
PEOPLE'S REPUBLIC OF CHINA

PRE-CARRIAGE

PLACE OF RECEIPT
OAKLAND, CA

VESSEL/VOYAGE   23W
YM SUCCESS

PORT OF LOADING
OAKLAND, CA

PORT OF DISCHARGE
HONG KONG, HK

PLACE OF DELIVERY
HONG KONG, HK

FINAL DESTINATION (FOR MERCHANT'S REFERENCE ONLY)

**PARTICULARS FURNISHED BY SHIPPER**

| CONTAINER & SEAL NO. | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |

1   X40'HR CNTR SLAC:
1360 CTNS FRESH PLUMS
SET TEMPERATURE 34F
AES# X20060908062196

40798LB
18506KG

KLFU5961614  0000174

LADEN ON BOARD YM SUCCESS 23W AT OAKLAND, CA ON 9-8-06

*** WAYBILL *** FREIGHT PREPAID.  SHIPPER'S LOAD AND COUNT.  CY/CY.

Total No. of Containers or Packages (in words): One Container

| FREIGHT AND CHARGES | RATE/PER | | | PREPAID | COLLECT |
|---|---|---|---|---|---|
| O.FRT (60514) | 1.000 | USD 2,400.00 | P40 | 2,400.00 | |
| DEST DLVY CHG | 1.000 | HKD 3,238.00 | P40 | | 3,238.00 |
| FAF | 1.000 | USD 635.00 | P40 | 635.00 | |
| CARRIER ISPS SECURITY C | 1.000 | USD 6.00 | P40 | 6.00 | |
| DOC FEE | 1.000 | USD 25.00 | LMP | 25.00 | |

PREPAID AT: RICHMOND   PAYABLE AT: HONG KONG   TOTAL:   USD 3,066.00   HKD 3,238.00

PLACE & DATE OF ISSUE
RICHMOND, VA
SEPTEMBER 08, 2006
FORM KL062 (6/3)

KAWASAKI KISEN KAISHA, LTD. ON ITS OWN BEHALF AND ON
BEHALF OF THE VESSEL, HER OWNERS, OPERATORS AND CHARTERERS.
By **NON-NEGOTIABLE (COPY)**
"K" Line America, Inc., as Agents for Carrier Kawasaki Kisen Kaisha, Ltd.

1.     All words or terms contained in this Waybill that begin with an upper case (capital) letter are terms defined in Carrier's B/L and/or Tariff(s), and have the same meaning herein (as applicable or with logical amendments) - see clause 3.1 below.

2.1     Unless otherwise set out on the face or back hereof, Containers or packages said to contain Goods and/or Goods are accepted by Carrier for Carriage on the terms hereof (whether expressly set out or incorporated by reference). These terms shall determine all rights, obligations and defenses applicable or available to Carrier, the master and Vessel (including her owners) in connection with or arising out of Carriage, including without limitation the acceptance, possession, handling, transportation and delivery of Containers and/or packages and/or Goods in every contingency, wheresoever and whensoever occurring, including (without limitation) in the event of deviation or of unseaworthiness of Vessel.

2.2     IT IS EXPRESSLY AGREED THAT NO SUB-CONTRACTOR (as defined in Carrier's B/L) SHALL HAVE ANY LIABILITY OR RESPONSIBILITY WHATSOEVER IN RESPECT OF OR IN CONNECTION WITH GOODS, AND THAT THE TERMS OF CLAUSE 5 OF CARRIER'S B/L (AS INCORPORATED HEREIN) APPLY TO ANY SUCH SUB-CONTRACTOR.

2.3     None of the terms of this Waybill may be, or may be deemed to have been waived or amended, otherwise than expressly in writing signed by Carrier.

3.1     Incorporation by reference. Save to the extent they are inconsistent with the terms expressly set out herein, the provisions of the following documents are hereby incorporated into and form part of the contract of carriage evidenced by this Waybill:(1) All of the terms, conditions, exceptions and stipulations on the back of the K line standard form bill of lading ("Carrier's B/L"). Every reference therein to the words "Bill(s) of Lading" shall be read and construed to mean the words "Non Negotiable Waybill(s)", and the terms and conditions thereof shall be read and construed in the context of this Waybill accordingly.(2) All the terms of Carrier's applicable Tariff(s) in effect the date the contract evidenced by this Waybill is entered into, and applied in accordance with all applicable national laws(3) The CMI Uniform Rules for Sea Waybills, excluding rule 4(iii)In the event of inconsistency between the documents themselves, they shall have priority in the order in which they appear.

3.2     The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in article 1(b) of the Hague Rules, the Hague Visby Rules and the United States Carriage of Goods by Sea Act. HOWEVER, THIS WAYBILL IS NOT A DOCUMENT OF TITLE TO GOODS.

3.3.1     Carrier's B/L may be inspected at or a copy obtained from Carrier's offices or those of its authorized agents. The text may also be found at Carrier's websites: www.kline.com or www.kline.co.uk.

3.3.2     The text of the CMI Uniform Rules for Sea Waybills may be found at www.comitemaritime.org/rules/rulessaway.html.

4.1     Unless otherwise specified in this Waybill (in particular, but without limitation, in clause 4.2 below in respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Delivery or other ports or places in the United States of America), delivery of Goods will be made only to the Consignee named on the face hereof, or its authorized agents, on production of proof of identity.

4.2     In respect of Goods for Carriage to Port(s) of Discharge or Place(s) of Delivery or other ports or places in the United States of America, clause 4.1 shall not apply. The procedure relating to the release of Goods applicable to any particular port or place in the United States of America is set out in Carrier's published tariff. Provided the said procedure(s) is/are followed, Carrier shall be deemed to have exercised reasonable care in relation to the release and delivery of Goods, and shall not be liable to Merchant in respect of any claim for misdelivery or wrongful release and/or delivery of the Goods. MERCHANT EXPRESSLY ACKNOWLEDGES AND AGREES THAT SUCH PROCEDURES WILL OR MAY PROVIDE FOR THE DELIVERY OF GOODS TO ANY PERSON WHO PRESENTS SHIPMENT PARTICULARS TO THE TERMINAL. If this sub-clause 4.2 is held invalid or inapplicable in any court of competent jurisdiction, the terms of clause 4.1 shall apply, read with the deletion of the words in parentheses.

5.1     Should the Shipper require delivery at a place elsewhere than at the Place of Delivery or the Port of Discharge as shown on the face hereof and should written instruction accordingly be given by the Shipper to Carrier or its agents, Carrier may, at its discretion, deliver Goods at such other place.

5.2     Should the Consignee require delivery elsewhere than at the Place of Delivery or the Port of Discharge shown on the face hereof and should written instruction be given reasonably in advance by the Consignee to Carrier or its agents, Carrier may, at its discretion, without any notice to the Shipper deliver Goods at such other place, PROVIDED ALWAYS that the right of control has been transferred to the Consignee in accordance with CMI Uniform Rule 6(ii).

5.3     Should the Shipper retain the right of control and should delivery be required to be made to a party other than the named Consignee, written authorization must be given by the Shipper to Carrier or its agents reasonably in advance of delivery, in accordance with CMI Uniform Rule 6(i).

6.1     Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, Carrier will, subject to the terms and conditions hereof, process cargo claims with the Consignee. Claims settlement with the Consignee (if any) shall be a complete discharge of Carrier's liability to the Shipper.

6.2.1     The Shipper accepts the terms and conditions hereof on its own behalf and on behalf of the Consignee, the owner of Goods, any person defined as Merchant in Carrier's B/L and any other person claiming by or through it or them. The Shipper warrants that it has the authority of all such persons so to accept the terms and conditions hereof, or will procure the acceptance/ratification of the terms and conditions by all such persons.

6.2.2     With respect to Carriage to, from or through US Territories, and without prejudice to the preceding sub-clause, all persons included in the definition of "Merchant" contained in Carrier's B/L are on notice through tariff publication of this Waybill form that they are bound to and by all the terms and conditions of this Waybill form and Carrier's B/L.

6.3     The Shipper further undertakes that no claim or allegation in respect of Goods shall be made against Carrier by any person other than in accordance with the terms and conditions of this Waybill.

7.1     The terms of this Waybill are severable, and if any term, exception, condition or stipulation is or is held to be invalid, null, void or unenforceable, such holding shall not affect in any way the validity or enforceability or any other term etc hereof.

7.2     The contract evidenced by this Waybill shall be governed by Japanese law except as may be otherwise provided for herein, and any action brought hereunder and/or in respect of the Goods shall be brought before the Tokyo District Court in Japan, to whose jurisdiction the Shipper hereby irrevocably submits, on its own behalf and on behalf of all persons included in the definition of "Merchant" contained in Carrier's B/L.

**EXHIBIT E** (9 pages)

## KAWASAKI KISEN KAISHA, LTD. COMBINED TRANSPORT

# BILL OF LADING TERMS
# EXPORT - FRONT

RECEIVED from the Shipper in apparent good order and condition unless otherwise indicated herein, the cargo or the container(s) or package(s) said to contain the cargo herein mentioned, to be carried subject to all the terms and conditions provided for on the face and back of this Bill of Lading, from the place of receipt or port of loading to the port of discharge or place of delivery shown herein and there to be delivered. If required by Carrier, this Bill of Lading duly endorsed must be surrendered in exchange for Goods or delivery order. None of the terms of this Bill o Lading can be waived by or for Carrier except by express waiver signed by Carrier or its duly authorized agent.

IN ACCEPTING THIS BILL OF LADING, Merchant agrees to be bound by all the stipulations, exceptions, terms and conditions on the face and back hereof, and the terms and conditions contained in Carrier's applicable Tariff, whether written, typed, stamped, or printed, as fully as if signed by Merchant, any local custom or privilege to the contrary notwithstanding, and agrees that all representations, agreements or freight engagements for and in connection with Carriage of Goods are superseded by this Bill of Lading. On presentation of one or more original(s) of this Bill of Lading (duly endorsed) to Carrier by or on behalf of Holder, the rights and liabilities arising in accordance with the terms hereof shall (without prejudice to the terms of this Bill of Lading, or any rule of law or statute rendering them binding on Merchant) become binding in all respects between Carrier and Holder as though the contract evidenced hereby or contained herein had been made between them.

IN WITNESS WHEREOF, the undersigned, on behalf of Kawasaki Kisen Kaisha, Ltd., Vessel, her owners, operators and charterers, has signed the number of Bill(s) of Lading stated below, all of this tenor and date, one of which being accomplished, the others to stand void.

Copyright © 2005, 2006, 2007, 2008 by
"K" Line America, Inc.
8730 Stony Point Parkway, Richmond, VA 23235

## KAWASAKI KISEN KAISHA, LTD. COMBINED TRANSPORT

# BILL OF LADING TERMS
# EXPORT - BACK

1. **( Definitions & Tariff )**

   (1) In this Bill of Lading the words and expressions specified below shall have the meanings attributed to them below:

      1. "Carriage" means the whole or any part of the operations and services undertaken by Carrier in respect of Goods covered under this Bill of Lading.
      2. "Carrier" means KAWASAKI KISEN KAISHA, LTD., Vessel, her owners, operators and charterers whether acting as carrier or bailee.
      3. "Combined Transport" means Carriage of Goods by Vessel plus one or more other modes of transport under this Bill of Lading from the place of receipt from Merchant to the place of delivery to Merchant.
      4. "Connecting Carrier" means carriers (other than Carrier), contracted by or acting on behalf of Carrier, participating in Carriage of Goods by land, water or air under this Bill of Lading.
      5. "Container" includes any container, trailer, transportable tank, flat or pallet or any similar article used to consolidate Goods and any ancillary equipment.
      6. "Goods" means the whole or any part of the cargo accepted from the shipper and includes the packing and any equipment or Container not supplied by or on behalf of Carrier.
      7. "Holder" means any person for the time being in possession of or entitled to this Bill of Lading by reason of the consignment of Goods or the endorsement of this Bill of Lading or otherwise.
      8. "Merchant" includes the shipper, consignor, consignee, owner and receiver of Goods, and Holder, and anyone acting on behalf of any such person, including but not limited to agents, servants, independent contractors and freight forwarders.
      9. "Sub-Contractor" includes stevedores, longshoremen, terminal operators, warehousemen, watchmen, any Connecting Carrier, and any person, firm, corporation, or other legal entity who or which performs services incidental to carriage of Goods under this Bill of Lading, and their servants, agents and independent contractors.
      10. "Vessel" includes the vessel named on the face hereof, any vessel, lighter, barge, ship, watercraft or any other means of water transport and any other vessel owned, operated, chartered or employed (in whole or in part) by Carrier or any Connecting Carrier and used in whole or in part for Carriage of Goods under this Bill of Lading.
      11. "Water Carriage" means such stage of Carriage of Goods as commencing from the time when Goods are loaded on Vessel and ending at the time when Goods are discharged from Vessel.

   (2) The terms of Carrier's applicable Tariff ("Tariff") are incorporated herein. Merchant's attention is drawn to clause 22 hereof. Copies of the relevant provisions of Tariff are obtainable from Carrier upon request. In the case of inconsistency between this Bill of Lading and Tariff, this Bill of Lading shall prevail.

2. **( Governing Law and Jurisdiction )** The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese law except as may be otherwise provided for herein, and any action thereunder or in connection with Carriage of Goods shall be brought before the Tokyo District Court in Japan, to whose jurisdiction Merchant irrevocably consents.

3. **Responsibility (All Trade other than to, from or through US Territories)** Except for the shipment of Goods to, from or through the United States, including its districts, territories and possessions (collectively called "US Territories"), which shall be governed by Clause 4 below, the following shall apply:

   1. (Responsibility When Loss Or Damage Proven To Have Occurred During Water Carriage) (1) Carrier's responsibility, if any, for any loss or damage to Goods proven to have taken place during Water Carriage shall be governed by the Law Concerning Carriage of Goods by Sea of Japan as amended in 1992 (Japan COGSA), but if for some reason, that should be held not to apply, then by the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated at Brussels, 25 August, 1924 (Hague Rules) as amended by the Protocol to Amend the International

Convention, signed at Brussels on 23 February, 1968 (Hague-Visby Rules) and the Protocol to the International Convention signed at Brussels on 21 December, 1979 amending the unit of account to be the Special Drawing Right as defined by the International Monetary Fund (SDR Protocol). (2) But if this Bill of Lading is adjudicated in a court having jurisdiction in a locality where there is in force a compulsorily applicable Act, Ordinance or Statute, it shall be subject to the provisions of such applicable Act, Ordinance or Statute but no further. (3) If a court of competent jurisdiction deems the United Nations Convention on the Carriage of Goods by Sea, 1978 (Hamburg Rules) to be compulsorily applicable then this Bill of Lading will be subject to Hamburg Rules, and only in such circumstances will any provision, stipulation or clause (or portion thereof) in this Bill of Lading that derogates from the provisions of Hamburg Rules be null and void, but only to the extent it derogates from Hamburg Rules.

2. (Responsibility Other Than During Water Carriage) (1) Carrier's responsibility, if any, for any loss or damage to Goods proven to have taken place during any period other than Water Carriage shall be governed by any relevant provisions contained in any applicable international convention or national law which provisions (a) cannot be departed from by private contract to the detriment of Merchant; and (b) would have applied if Merchant had made a separate and direct contract with Carrier in respect of the particular stage of Carriage during which the loss or damage occurred. (2) In no event, however, shall Carrier have liability with respect to any loss or damage to Goods unless caused by the actual fault or negligence of Carrier, Sub-Contractors, or any master, officers, crew, employees, servants, agents or independent contractors who perform(s) service incidental to Carriage of Goods nor shall Carrier have any liability with respect to any loss or damage to Goods caused in whole or in part by (I) Act of God, (II) Act of war or act of public enemies, (III) Arrest or restraint of princes, rulers or people, or seizure under legal process, (IV) Quarantine restriction, (V) Act or omission of Merchant, (VI) Insufficiency of or defective packing or marking, (VII) Handling, loading, stowage or unloading of Goods by or on behalf of Merchant, (VIII) Inherent vice of Goods, (IX) Strike, lock-out, stoppage or restraint of labour, from whatever cause, whether partial or general, (X) Any cause or event which Carrier could not avoid and the consequences whereof Carrier could not prevent by the exercise of reasonable diligence, (XI) Compliance with the instructions of any person entitled to give them. (3) In no event shall Carrier's liability, if any, during this period exceed US$2.00 per kilo of the gross weight of Goods lost or damaged.

3. (Responsibility When Stage Of Carriage During Which Loss or Damage Occurred Is Unproven) If the stage of Carriage during which loss or damage occurred is not proven by Merchant, then Carrier's responsibility, if any, shall be determined in accordance with Clause 3 (B)(2) and (3) above instead of 3 (A).

4. ( **Responsibility For Shipments To, From Or Through US Territories** ) (1) With respect to Goods shipped to, from or through US Territories, Carrier's responsibilities during the entire period (and not just during Water Carriage) from the time of receipt of Goods to the time of delivery of Goods shall be governed by the United States Carriage of Goods by Sea Act (US COGSA) and US COGSA shall be deemed incorporated herein during the entire aforesaid period, provided however that if loss or damage to Goods is proven to have occurred during other than Water Carriage and outside US Territories, Carrier's responsibilities shall be determined in accordance with Clause 3(B) instead of US COGSA. (2) If US COGSA so applies then with respect to Goods carried on deck and stated on the face hereof to be so carried, and with respect to live animals birds, reptiles, fish, shellfish and plants, all risk or loss or damage by perils inherent in or incidental to such Carriage shall be borne by Merchant, and all such Goods whether carried on deck or under deck shall participate in general average, but in all other respects in connection with the custody and Carriage of such Goods, Carrier shall have the benefit of the provisions of US COGSA, notwithstanding Section I(c) thereof, and of all the terms and conditions of this Bill of Lading except those inconsistent with the provisions of this Clause. (3) Also, if US COGSA so applies, in no event shall Carrier be or become liable for any loss or damage to or in connection with Carriage of Goods in an amount exceeding US$500 per package lawful money of USA, or in case of Goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such Goods have been declared by the shipper before receipt of Goods by Carrier and inserted in this Bill of Lading.

5. ( **Sub-Contracting: Exemptions, Immunities, Limitations, etc. of Participant(s)** ) (1) Carrier shall be entitled to sub-contract on any terms whatsoever Carriage, including without limitation, the loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by Carrier in relation to Goods by any of the following: (I) any Connecting Carrier, (II) masters, officers, crew, employees

or any other servants, of Carrier and Connecting Carrier, (III) sub-contractors, stevedores, longshoremen, terminal operators, warehousemen, watchmen, agents and independent contractors whatsoever used or employed by Carrier from time to time in connection with the performance of any of Carrier's obligations under this Bill of Lading (all of the foregoing are hereafter referred to as "Participant(s)"). (2) Merchant undertakes that no claim or allegation shall be made against any of Participants which imposes or attempts to impose upon any of them or any vessel owned or chartered by any of them any liability whatsoever in connection with Goods or Carriage of Goods, whether or not involving the negligence of any such person, and, if any such claim or allegation should nevertheless be made, to indemnify Carrier against all consequences thereof. Without prejudice to the foregoing, every such vessel and Such Participant(s) shall have the benefit of all provisions herein benefiting Carrier as if such provisions were expressly for their benefit; and, in entering into this contract, Carrier, to the extent of those provisions, does so not only on its own behalf, but also as agent and trustee for such vessel and Participant(s). (3) Merchant further undertakes that no claim or allegation of any nature whatsoever in respect of Goods shall be made against Carrier or any person entitled to the benefit of clauses 5(2) and 5(3) by any person, other than in accordance with and subject to the terms of this Bill of Lading, which imposes or attempts to impose upon Carrier or such person any liability whatsoever in connection with Goods or Carriage thereof, whether or not involving the negligence of Carrier or such person, and, if any such claim or allegation should nevertheless be made, to indemnify Carrier against all consequences thereof.

6. ( **Methods and Routes of Carriage** ) It is understood and agreed that (a) Carriage of Goods may be done by more than one method or route of transport (whether or not direct, customary or advertised), including, but not limited to transport by land, water and air and by more than one Vessel or other means of transport; (b) no method or route of transport nor Vessel nor any other means of transport is agreed to be used and the same, at any time, may be changed or substituted without notice from those originally intended by Carrier; (c) Goods or any part thereof may be discharged and/or stored at any port or place, whether named or not; (d) Carrier may pack or unpack Goods into or out any type of Container or other means of packaging or shipment; (e) Carrier may carry Goods in one or more shipments at one or more times; (f) Vessel or other means of transport, whether or not Goods are then on board, is at liberty to adjust navigational instruments, make trial trips or tests, drydock or be repaired, shift berths, take in fuel or other necessaries, embark or disembark passengers, crew, cargo or stores, sail with or without pilots, tow or be towed, or save or attempt to save life or property or to be guided by weather conditions.

7. ( **Period of Responsibility/No Undertaking of Arrival Time** ) (1) Carrier shall not be responsible for any loss or damage to Goods howsoever occurring, if such loss or damage occurring prior to receipt of Goods by Carrier or after delivery of Goods by Carrier. (2) Carrier does not undertake that Goods shall arrive at the port of discharge or place of delivery at any particular time or in time to meet any particular market or use, and Carrier shall not be responsible for any direct or indirect loss or damages which is caused through delay.

8. ( **Liberties** ) (1) In any situation, whether existing or anticipated prior to or during Carriage, which in the judgment of Carrier and/or any person charged with Carriage or safekeeping of Goods, has caused or may cause danger, injury, loss, delay or disadvantage to Vessel, Carrier, Goods, any person and/or any property, Carrier shall be entitled, have the liberty and in the manner it deems advisable, as an agent for and at the sole risk and expense of Merchant, to: (a) unpack Container(s) or dispose of Goods; (b) prior to loading, cancel the contract of carriage without compensation and require Merchant to take delivery of Goods, or place Goods in a warehouse or other place; (c) once Goods are laden or shipped on board, discharge Goods, or any portion thereof, at any place selected by Carrier at its sole discretion, or back at the port of loading or place of receipt. Actions undertaken pursuant to (a) (b) or (c) shall constitute full performance of this contract, and Carrier shall be released from any and all responsibility and liability hereunder. (2) Carrier shall make all arrangements authorized in accordance with (1) above without any liability whatsoever in respect to such agency and/or actions, and shall acquire a lien upon Goods therefor; and upon demand, Merchant shall reimburse Carrier for all extra freight, charges and expenses incurred thereby. (3) The situations referred to in (1) above include, but are not limited to, those caused by war declared or undeclared, hostile, warlike, belligerent acts, disturbances, riots, civil commotions; closure, obstacles, dangers in or to any canal; blockade of any port or place, interdiction, prohibition, restriction of trade or commerce; quarantine, health, sanitary regulations or restrictions; epidemics, diseases; strikes, lockouts or other labour problems, congestion at any port, wharf, sea terminal or other place; shortage, absence, obstacles of available labour o facilities for loading, discharge, delivery, handling of Goods; bad weather, shallow water, ice, landslip or othe transportation obstacles. (4) Carrier shall also have the liberty to comply with orders, directions, regulations, recommendations as to departure, arrival, route, places of call, stoppage, loading, discharge, handling,

delivery or any other important factor given by any public authority or under the terms of any insurance on Vessel, and any such compliance shall not be a deviation but shall be deemed to be included within the contractual Carriage.

9.   ( **Unknown Clause** ) (1) Any reference on the face hereof to marks, numbers, description, quality, quantity, gauge, weight, measure, nature, kind, value and any other particulars of Goods is as furnished by Merchant, with respect to which Carrier does not make any representation, nor shall Carrier be under any responsibility whatsoever in respect of such description or particulars. (2) Merchant warrants to Carrier that the particulars furnished by him are correct, and shall indemnify Carrier against all loss, damage, expenses, liability, penalties and fines arising or resulting from inaccuracy thereof.

10.  ( **Carrier's Container** ) (1) Merchant shall assume full responsibility for and shall indemnify Carrier against any loss of or damage to Container(s) and other equipment provided by or on behalf of Carrier, which occurs while in the possession or control of Merchant, or agents, servants, contractors or any other persons engaged by or on behalf of Merchant. (2) Carrier shall in no event be liable for and Merchant shall defend, indemnify and hold Carrier harmless from and against any loss, damage, liability, cost or expense, including attorneys' fees, arising out of or in any way connected with loss of or damage to any property of Carrier and others or injuries or death of any person caused by Container(s) or other equipment provided by or on behalf of Carrier, or the contents thereof, during handling by, or while in the possession or control of Merchant, or agents, servants, contractors or any other persons engaged by or on behalf of Merchant, whether or not contributed by the negligence, breach of express or implied warranty, strict liability or otherwise of Carrier or any other person other than Merchant.

11.  ( **Container Packed by Merchant** ) If Goods received by Carrier are in Container(s) into which contents have been packed by or on behalf of Merchant, Merchant warrants that the stowage and securing of the contents of Container(s) and their closing and sealing are safe and proper and also warrants that Container(s and contents thereof are suitable for Carriage in accordance with the terms hereof including Clause 15. In the event of Merchant's breach of said warranties, Carrier shall not be responsible for any loss of or damage to or in connection with Goods and Merchant shall be liable for loss of or damage to any property, or for personal injury, death or the consequences of any other accidents or events whatsoever and shall defend, indemnify and hold Carrier harmless against all loss, damage, liability, cost or expense, including attorneys' fees, arising out of or in any way connected with said accidents or events. Merchant shall inspect Container(s) when the same are furnished by or on behalf of Carrier, and they shall be deemed to have been accepted by Merchant as being in sound and suitable condition for the purpose of Carriage contracted herein.

12.  ( **Inspection of Contents/Container Seals** ) (1) Carrier shall be at liberty to open Container(s) and to inspect Goods and take any measures with respect thereto without notice to Merchant at such time and place as Carrier may deem necessary and all expenses incurred therefrom shall be borne by Merchant if such expenses relate to Container(s) packed by Merchant, or were incurred by a reason for which Merchant should be responsible. (2) If Container(s) are delivered by Carrier with seals intact, such delivery shall be deemed as full and complete performance of Carrier's obligation hereunder and Carrier shall not be liable for any loss of or damage to the contents of Container(s). (3) In case the seals of Container(s) are broken by or pursuant to the order of the customs or other authorities, Carrier shall not be liable for any loss, damage, expenses or any other consequences arising or resulting therefrom.

13.  ( **Special Container** ) (1) Carrier undertakes to carry Goods in refrigerated, heated, insulated, ventilated or any other special Container(s) only by special arrangement in writing and only when special freight as required is paid. (2) Notwithstanding anything contained in this Bill of Lading, Carrier shall not be responsible for the function of any special Container(s) provided that Carrier exercises due diligence before or at the beginning of Carriage of special Container(s) to determine that special Container(s) is then in good working order. (3) Except as provided in (2) above, Carrier shall not be liable for any loss of or damage to Goods arising from latent defects, derangement, breakdown, or stoppage of the refrigerating machinery, plant, insulation and/or any apparatus of Container, Vessel, or other means of transport or conveyance and any other facilities. (4) In the case of refrigerated or special Containers packed by Merchant, Merchant shall properly prepare and pack Goods for such shipment and set the temperature, as required. (5) The maintenance of the temperature within a refrigerated or special Container is not guaranteed by Carrier and is solely at Merchant's risk, even if a particular temperature is stated on the face hereof and irrespective of whether Container is packed or the temperature is set by Carrier or Merchant. (6) Merchant shall have contents at the requested temperature setting prior to packing into a refrigerated Container whether same is to be packed by Merchant or Carrier.

14. ( **Dangerous Goods, Contraband** ) (1) Carrier undertakes to carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, noxious, hazardous, poisonous, injurious or any other dangerous nature only upon Carrier's acceptance of a prior written application by Merchant for Carriage of such Goods. Such application must accurately state the nature, name, label and classification of Goods as well as the method of rendering them innocuous, with the full names, addresses and telephone numbers of Merchant. (2) Merchant shall undertake that the nature of Goods referred to in (1) above is distinctly and permanently marked and manifested on the outside of the package(s) and Container(s) and shall also undertake to submit the documents or certificates required by any applicable statutes or regulations at any stage of Carriage or by Carrier. (3) Whenever Goods are perceived or are discovered to pose a threat to Vessel, any other means of transport, cargoes, properties or persons, or not to comply with (1) as (2) above, or Goods are perceived or found to be contraband or prohibited by any laws or regulations of the port of loading, discharge or call or any place or waters during Carriage, Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard or discharged and left to Merchant at any stage and place Carrier may choose or otherwise dispose of at Carrier's discretion without compensation, and Merchant shall be liable for and indemnify Carrier against all of loss, damage or liability including loss of freight, and any expenses directly or indirectly arising out of or resulting from such Goods, and shall post any necessary bonds or financial guarantinees as may be required.

15. ( **Stowage Under and On Deck** ) Goods, whether in Container(s) or not, may be carried on deck or under deck without notice to Merchant and without any note, mark or stamp making any statement of "on-deck stowage" on the face hereof. All such Goods whether carried on deck or under deck, shall participate in general average. With respect to Goods carried on deck and stated on the face hereof to be so carried, all risk of loss of or damage to Goods shall be borne by Merchant, whether or not caused by Carrier's negligence or Vessel's unseaworthiness, and Carrier shall have the benefit of all the provisions of this Bill of Lading, except those inconsistent with the provisions of this Clause.

16. ( **Live Animals and Plants** ) Notwithstanding any other provision herein, Carrier shall not be responsible for any accident, disease, mortality, loss of or damage to live animals, including but not limited to birds, reptiles, fish and shellfish, and plants arising or resulting from any cause whatsoever including Carrier's negligence or Vessel's unseaworthiness and shall have the benefit of all the provisions of this Bill of Lading, except those inconsistent with the provisions of this Clause.

17. ( **Valuable Goods** ) Carrier shall not be liable to any extent for any loss of or damage to or in connection with platinum, gold, silver, jewelry, precious stones, precious metals, radioisotopes, precious chemicals, bullion, specie, currency, negotiable instruments, securities, writings, documents, pictures, works of art, curios, heirlooms, collections of every nature or any other valuable goods whatsoever including Goods having particular value only for Merchant, unless the true nature and value of Goods have been declared in writing by Merchant before receipt of Goods by Carrier, and the same is inserted in this Bill of Lading and ad valorem freight has been prepaid.

18. ( **Heavy Lift** ) (1) The weight of a single piece or package exceeding one metric ton gross must be declared by Merchant in writing before receipt by Carrier and must be marked clearly and durably on the outside of the piece or package in letters and figures with the proper lifting points. (2) In case of Merchant's failure in his obligations under (1) above, Carrier shall not be responsible for any loss of or damage to or in connection with Goods, and Merchant shall be liable for loss of or damage to any property or for personal injury or death arising as a result of Merchant's said failure and shall indemnify, defend and hold Carrier harmless against all loss or liability suffered or incurred by Carrier as a result of such failure.

19. ( **Notification and Delivery** ) (1) Any mention in this Bill of Lading of parties to be notified of the arrival of Goods is solely for information of Carrier, and failure to give such notification shall not involve Carrier in any liability nor relieve Merchant of any obligation hereunder. (2) Merchant shall take delivery of Goods within the time provided for in Tariff. (3) If Merchant fails to take delivery of Goods or part of them in accordance with this Bill of Lading, Carrier may without notice unstow Goods or that part thereof and/or store Goods or that part thereof ashore, afloat, in the open or under cover. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of Carrier in respect of Goods or that part thereof shall cease. (4) Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in Tariff, which is incorporated in this Bill of Lading. (5) Carrier may in his absolute discretion receive Goods as Full Container Load and deliver them as Less than Container Load and/or as split delivery of Goods to more than one receiver. In such event Carrier shall not be liable for any shortage, loss, damage or discrepancies of

Goods, which are found upon unpacking of Container. Merchant shall be liable for an appropriate adjustment of the freight and shall pay any additional costs incurred. (6) Carrier may in his absolute discretion receive Goods as Less than Container Load and deliver them as Full Container Load. In such event Carrier shall not be liable for any shortage, loss, damage or discrepancies of Goods, which were not apparent at the time of such delivery, provided that it shall have exercised ordinary care in packing Container. (7) If, at the place of delivery, Carrier is required to discharge Goods into the custody of Customs, port or other authority, such discharge into custody shall be due delivery to Merchant under this Bill of Lading. (8) If Goods are unclaimed within a reasonable time but in any event no longer than 3 running days from the date Goods arrive at the port of discharge or place of delivery, or whenever in Carrier's opinion Goods will become deteriorated, decayed or worthless, Carrier may, at its discretion and subject to its lien and without any responsibility attaching to it, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of Merchant.

20. ( **Fire** ) Carrier shall not be responsible for any loss of or damage to Goods arising or resulting from fire occurring at any time throughout Carriage, unless proven to have been caused by the actual fault or privity o Carrier.

21. ( **Lien** ) Carrier shall have a lien on Goods and any documents relating thereto, which shall survive delivery, for all freight, deadfreight, demurrage, damage, loss, charges, expenses and any other sums whatsoever payable by or chargeable to or for the account of Merchant or Goods under this Bill of Lading and any contract preliminary hereto, and for the costs and expenses including attorneys' fees, of recovering the same and may sell Goods privately or by public auction or otherwise exercise a lien on Goods without notice to Merchant. If on sale of Goods, the proceeds fail to cover the amount due and the costs and expenses incurred, Carrier shall be entitled to recover the deficit from Merchant.

22. ( **Freight and Charges** ) (1) Freight may be calculated on the basis of the particulars of Goods furnished by Merchant who shall be deemed to have guaranteed to Carrier the accuracy of the contents, weight, measure or value as furnished by him, at the time of receipt of Goods by Carrier, but Carrier may, at any time, open Container(s) and/or package(s) and examine contents, weight, measure or value of Goods at the risk and expense of Merchant. In case of incorrect declaration of the particulars of Goods as above, Merchant shall be liable for and bound to pay to Carrier (a) the balance of freight between the freight charged and that which would have been due had the correct details been given plus (b) as and by way of liquidated and ascertained damages, a sum equal to the correct freight. (2) Full freight and charges to the port of discharge or place of delivery named herein shall be considered as completely earned on receipt of Goods by Carrier, whether to be prepaid or to be collected at destination. Carrier shall be entitled to all freight and other charges due hereunder, and to receive and retain such freight and charges irrevocably under any circumstances whatsoever, whether Vessel or any other means of transport and/or Goods be lost or not, or Carriage be broken up or frustrated or abandoned at any stage of Carriage. Full freight shall be paid on damaged or unsound Goods. (3) The payment of freight and/or charges shall be made in full and in cash without any offset, counterclaim or deduction. Merchant's attention is drawn to the stipulations concerning currency in which the freight and charges are to be paid, rate of exchange, devaluation and other contingencies relative to freight and charges specified on the face of this Bill of Lading or in Tariff. (4) Merchant shall be liable for, and indemnify Carrier against, all dues, duties, taxes and charges including consular fees levied on Goods, and for all fines and/or loss sustained or incurred by Carrier in connection with Goods, howsoever caused, including Merchant's failure to comply with laws and regulations of any government or public authority in connection with Goods or failure to procure consular, board of health or other certificate to accompany Goods. Merchant shall be liable for return freight and charges on Goods refused exportation or importation by any government or public authority. If Carrier is of the opinion that Goods stand in need of sorting, inspecting, mending, repairing or reconditioning, or otherwise require protecting or caring for, Carrier may carry out such work at the cost and expense of Merchant. (5) Each Merchant shall be jointly and severally liable to Carrier for the payment of all freight and charges and for the performance of the obligations of each of them hereunder. (6) Payment of freight and charges to a freight forwarder, broker or anyone other than Carrier or its duly authorized agent shall not be deemed payment to Carrier and payment shall be made solely at the payor's risk.

23. ( **Notice of Claim and Time for Suit against Carrier** ) (1) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to Carrier at the port of discharge or place of delivery before or at the time of delivery of Goods or, if the loss or damage be not apparent, within 3 days after delivery, Goods shall be deemed to have been delivered as described in this Bill of Lading. (2) In any event, Carrier shall be discharged from all liability in respect of non-delivery, misdelivery, delay, loss or damage

unless suit is brought within one year after delivery of Goods or the date when Goods should have been delivered. (3) Notwithstanding (2) above, with respect of any non-delivery, misdelivery, delay, loss or damage which may have occurred during other than Water Carriage, Merchant must file a claim with Carrier within 9 months after delivery of Goods or the date when Goods should have been delivered, failing which Carrier will be discharged of all liability therefor.

24. ( **Limitation of Liability** ) (1) All claims for which Carrier may be liable shall be adjusted and settled on the basis of Merchant's net invoice cost, plus freight and insurance premium, if paid. (2) Save as otherwise provided herein, Carrier shall in no circumstances be liable for direct or indirect or consequential loss or damage arising from Carriage of Goods hereunder. (3) Under no circumstances shall Carrier be liable for loss or damage in an amount exceeding the amount which can be assessed by Clause 3 or 4, as the case may be, unless the value of Goods higher than the amount so assessed has been declared in writing by Merchant before receipt of Goods by Carrier and inserted on the face hereof with nature thereof and extra freight has been paid as required. (4) Where Goods have been either packed into Container(s) by or on behalf of Merchant, it is expressly agreed that the number of such Container(s) shown on the face hereof shall be considered as the number of the package(s) or unit(s) for the purpose of the application of the limitation of liability provided for herein.

25. ( **Limitation Statutes** ) (1) Nothing in this Bill of Lading shall operate to limit or deprive Carrier of any statutory protection or exemption or limitation of liability authorised by any applicable laws, statutes or regulations of any country. (2) It is agreed by Merchant that Carrier qualifies and shall be regarded as a person entitled to limit liability under any applicable Convention on the Limitation of Liability for Maritime Claims notwithstanding that Carrier may have secured space on board the relevant Vessel by means of a slot charter, bill of lading, waybill or other form of contract of carriage. Subject to any law compulsorily applicable to Carriage to the contrary, and save to that extent, the fund to which Carrier may limit its liability in respect of all claims arising out of an incident shall be that part or proportion of the limitation fund applicable to the actual carrier that is available for Carrier's claims against the actual carrier.

26. ( **Defenses and Limits For Carrier** ) The defences and limits of liability provided for in this Bill of Lading shall apply in any action against Carrier for loss of or damage to the Goods whether the action be founded in contract or in tort or according to any other theory of legal liability

27. ( **Regulations relating to Goods** ) Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of Goods, and indemnify the Carrier in respect thereof.

28. ( **General Average; New Jason Clause** ) (1) General average shall be adjusted, stated and settled at Tokyo or any other place as elected by Carrier (or, as the case may be Connecting Carrier) according to York Antwerp Rules 1994 or any amendment thereto and as to matters not provided for by these Rules, according to the laws and usages of the place of adjustment, and in the currency selected by Carrier (or, as the case may be Connecting Carrier). The general average statement shall be prepared by the adjusters appointed by Carrier (or, as the case may be Connecting Carrier). Average agreement or bond and such cash deposit as Carrier (or, as the case may be Connecting Carrier) may deem sufficient to cover the estimated contribution of Goods and any salvage and special charges thereon and any other additional securities as Carrier (or, as the case may be Connecting Carrier) may require shall be furnished by Merchant to Carrier (or, as the case may be Connecting Carrier) before delivery of Goods. (2) Carrier shall be under no obligation to exercise any lien for general average contribution due to Merchant. (3) In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, Carrier is not responsible by statute, contract or otherwise, Goods and Merchant shall jointly and severally contribute with Carrier in general average to the payment of any sacrifices, loss or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of Goods. If a salving ship is owned or operated by Carrier, salvage shall be paid for as fully and in the same manner as if such salving ship belonged to strangers.

29. ( **Both To Blame Collision** ) The Both-To-Blame Collision Clause published by the Baltic and International Maritime Council (BIMCO), a copy of which is available upon request, is hereby incorporated into this Bill of Lading.

30. ( **Miscellaneous** ) (1) The terms of this Bill of Lading are separable, and if any term or condition is, or is held to be invalid, null and void, or unenforceable, such holding shall not affect in any way the validity or enforceability of any other term or condition of this Bill of Lading. (2) No servant or agent of Carrier shall have power to waive or vary any terms of this Bill of Lading unless such waiver or variation is in writing and is specifically authorised or ratified in writing by Carrier. (3) The terms of this Bill of Lading shall govern the responsibility of Carrier in connection with or arising out of the supply of a Container to Merchant whether before or after Goods are received by Carrier for Carriage or delivered to Merchant.

Copyright © 2005, 2006, 2007, 2008 by
*"K" Line America, Inc.*
8730 Stony Point Parkway, Richmond, VA 23235